## CHARLESS, Respondent, v. RANKIN, Appellant.

1. Although every proprietor of land has a right to the support of the soil of an adjacent lot, as a natural servitude or easement, yet this servitude does not impose upon the adjoining proprietor the obligation of furnishing an increased support where lateral pressure is increased by the erection of buildings, unless such a right of servitude has been conferred by grant or the lapse of time.

4. Where excavations are made upon one of two contiguous lots, the proprietor making the same will be responsible for all damage caused to buildings or other property upon the adjoining lot by reason of such excavation having been negligently made.

3. It is however erroneous to rule that the proprietor having the excavating done is bound to use such care and caution as a prudent man, experienced in such work, would have exercised, if he had himself been the owner of the injured building. Such a ruling tends to mislead, as one who is proprietor of both the contiguous lots might very prudently subject himself to expense and inconvenience for the protection of his building, that could not justly be imposed upon one making excavations upon an adjoining lot belonging to him.

4. The excavator can not set up as a defence that he used such care as his builder and superintendent, a skillful and careful person, deemed necessary. The decisive question is, whether there was actual negligence in making the excavation.

## *Appeal from St. Louis Circuit Court.*

This was an action to recover damages for injuries alleged by plaintiff, Joseph Charless, in his petition to have been sustained by him in consequence of the " negligent, unskillful and improper manner " in which defendant, David Rankin, made certain excavations upon a lot adjoining that of plaintiff, which, by undermining the foundations of plaintiff's building, caused the walls thereof to fall.

The defence set up was substantially a denial of the negligence alleged in the petition.

It is deemed wholly unnecessary to set forth the evidence bearing upon the point at issue, as the questions of law discussed and decided, can be fully understood from the instructions given and refused by the court below.

On motion of the plaintiff, the court gave the following instructions to the jury, to the giving of which the defendant excepted : " If the jury believe from the evidence that the digging for the foundation of defendant's building was performed in a reckless, negligent, or improper manner, and that by reason thereof plaintiff's house was thrown down, then plaintiff is entitled to recover such damage as he has sustained by the throwing down of his house. 2. If the jury believe from the evidence, that the fall of plaintiff's building might have been prevented by the exercise of reasonable care and skill on the part of those who were digging defendant's cellar, and that, owing to their failure to exercise such care and skill, damage resulted to plaintiff's building, then plaintiff is entitled to recover in this action such an amount of damages as he may prove he has sustained by the fall of his building. 3. In excavating by the side of another's building, it is the duty of the person having the excavating done to use such care and caution,

to prevent injury to such building, as a sensible and prudent man, experienced in such work, would exercise, if he were the owner of the building ; and the omission of such care and caution is culpable negligence, and renders the person having the excavating done liable for all the damages resulting therefrom. 6. The measure of damages in this case is the amount of money required to rebuild plaintiff's house as it was before the fall, and the value of the house thrown down to plaintiff during the time necessarily taken to rebuild it, with the interest on those amounts from the time when the house was completed, after its fall, to the present time."

And, on the prayer of the defendant, the court gave the following instructions to the jury : " 2. In order to find for the plaintiff, the jury must find, not only that the falling of plaintiff's wall was occasioned by the digging of defendant's cellar, but also that such digging was done in a negligent or unskillful manner, which negligence or unskillfulness caused the plaintiff's wall to fall down. 3. If the jury believe from the evidence, that but for the rain which fell the night preceding the fall of plaintiff's wall, the said wall would not have fallen down, they ought to find for the defendant, if defendant omitted no proper precaution to guard against the rain ; or, if the jury find that the plaintiff's wall, either because it was built upon an insufficient foundation, or of defective materials, or of insufficient thickness, or in a negligent or unskillful manner, and but for such defect or defects in construction, or materials, whould not have fallen, they ought, in either such event, to find for the defendant."

The defendant then asked the following instructions, which the court refused to give, and the defendant excepted : " 1. If the jury find that the defendant, in excavating his cellar, dug a proper depth, and entirely on his own land, the plaintiff can not recover. 4. If the jury find from the evidence, that defendant had employed a superintendent and architect to oversee and control and manage the erection of his building, and to erect the same, which architect and superintendent was skill-

ful, experienced, careful, and competent to the purpose, and
that all the care and precaution that said architect and super-
intendent judged sufficient to protect plaintiff's wall was used
for that purpose, they ought to find for the defendant."

*T. Polk*, for appellant.   1. If the defendant's excavation
would not have caused the land of the plaintiff, on which his
house stood, to fall in if it had no building upon it, but had
remained in its natural state, the plaintiff was not entitled to
recover.   (Thurston v. Hancock, 12 Mass. 220; 9 Barn. &
Cress. 725 ; Wyatt v. Harison, 3 Barn. & Adol. 871 ; Losala
v. Holbrook, 4 Paige's Ch. R. 173; Hyde v. Thornburgh, 2
Car. & Kir. 251.)   2. Further, if the defendant (Rankin)
dug exclusively upon his own soil, and in nowise encroached
upon the plaintiff's premises, the plaintiff had no right to re-
cover against him.   (2 Rolle's Abr. 564–5 ; 1 Com. Dig. ac-
tion on the case for nuisance, 420. )   3. The fourth instruction
prayed by the defendant, and which the Circuit Court refused
to give, does assert that the principal is not liable for the neg-
ligence of his servants and agents, as the court below seemed
to understand it, but that the facts stated in the instruction pre-
clude the possibility of any negligence or unskillfulness on his
part, and make a case of care and caution that put him be-
yond the possibility of a recovery in this action.   (See case of
Hart v. City of Philadelphia.)   In an action for malicious ar-
rest, or malicious prosecution even, it is a good defence to the
action that the defendant followed the advice of competent
counsel, asked and given in good faith, upon a full statement
of the facts.   (Blunt v. Little, 3 Mason, 102.)

*Strong* and *Drake*, for respondent.   1. The right of an
owner of land to the enjoyment thereof is qualified by the
rights of others.   The maxim of the law is, " *sic utere tuo,
ut alienum non lædas.*"   (Sedg. on Dam. 138 ; Hays v.
Cohoes Co. 2 Comst. 159, 163.)   2. If plaintiff's building
was thrown down by the negligent or unskillful manner in which
defendant's servants dug his cellar, or by the omission on their
part of reasonable and proper care and skill, in order to pre-

vent the injury, then plaintiff is entitled to recover. (2 Stephens' Nisi Prius, 1011, 1012 ; 3 Kent's Com. 437 and note *b.* ; Vaughn v. Menlove, 3 Bingh. N. 568 ; Trown v. Chadwick, id. 334, 353–4 ; Jones v. Bird, 5 Barn. & Ald. 837, 848 ; Tuberville v. Stamp, 1 Selk. 13 ; Roberts v. Read, 16 East, 215 ; Boughton v. Carter, 18 J. R. 405 ; Dodd v. Holme and others, 3 Neville & Manning, 739 ; 1 Adolph. & Ellis, 493 ; Clare v. Foote, 8 J. R. 421 ; Pantan v. Holland, 17 J. R. 92, at p. 100, 101.) 3. A person obstructing a public way, or using a privilege, will be held liable for all the damage resulting from his conduct, unless he use more than ordinary care to prevent injury. (Nelson v. Godfrey, 12 Ill. 20 ; Clarke v. Lake, Scam. 2 Ill. 219, p. 231.) While every man has the reasonable and proper use of his own property, he can not be, and ought not to be exempt from liability for damages resulting from the negligent, unskillful or improper use of it. So long as society exists, the rights of individuals must be affected, modified and abridged by the rights of others. The defendant had no better right to the use of his ground than plaintiff had to his. And the defendant, in the enjoyment of his rights, was bound to exercise reasonable care and skill to prevent injury to the rights of plaintiff. Every man may well be held responsible for the consequences of his negligence and want of reasonable skill in the performance of what he undertakes. But what is reasonable care and skill ? The care and skill exercised by a prudent man, acquainted with the business he is performing, is, perhaps, the only standard, as it certainly is the best for determining whether there has been negligence in a given case. This is the rule laid down by the third instruction given.

LEONARD, Judge, delivered the opinion of the court.

The right to support from the adjoining soil may be claimed either for the land in its natural state, or for it subjected to an artificial pressure by means of building or otherwise. The

right in the former case would seem to be a natural servitude or easement belonging to contiguous lots, and accordingly it was recognized and protected in the Roman law by specified regulations, and similar provisions have been introduced into the civil code of France. (Code Civil, art. 614.) We are not aware of any express common law decision upon this subject; but we find it said of old, in Rolle's Abr. 564, tit. Trespass: "It seems that a man who has land closely adjoining my land, can not dig his land so near mine that mine would fall into his pit, and an action brought for such an act would lie;" and in Wyatt vs. Harman, (3 Barn. & Adol. 874,) Lord Tenderden remarked, in delivering the judgment of the court of king's bench: "It may be true that, if my land adjoins that of another, and I have not, by building, increased the weight upon my soil, and my neighbor digs in his land, so as to occasion mine to fall in, he may be liable to an action."

When, however, the lateral pressure has been increased by the erection of buildings, it seems to be well settled at common law by authorities, that no man has a right to an increased support unless he has acquired such a servitude by grant or prescription. It is so laid down in the early case of Wilder v. Minsterly (2 Rolle's Abr. 564). "If A. be seized in fee of copy-hold land, closely adjoining the land of B., and A. erect a new house upon his copy-hold land, and any part of his house is erected on the confines of his land, adjoining the land of B.; if B. afterwards dig his land so near to the foundation of the house of A., but not in the land of A., that by it the foundation of the messuage and the messuage itself fall into the pit, still no action lies by A. against B., inasmuch as it was the fault of A. himself, that he built his house so near the land of B.; for he can not, by his own act, prevent B. from making the best usage of his land that he can." And Lord Tenderden, in delivering the judgment of the court in the case before cited, said: "The question reduces itself to this: if a person builds to the utmost extremity of his own land, and the owner of the adjoining land digs the ground there,

so as to remove some part of the soil which formed the support of the building so erected, whether an action lies for the injury thereby occasioned. Whatever the law might be, if the damage complained of were in respect of an ancient messuage, possessed by the plaintiff, at the extremity of his own land, which circumstance of contiguity might imply the consent of the adjoining proprietor at a former time to the erection of the building in that situation, it is enough to say in this case that the building is not alleged to be ancient, but may, as far as appears from the declaration, have been recently erected, and if so, then, according to the authorities, the plaintiff is not entitled to recover." In the more recent case of Partridge v. Scott, (3 Mees. & Wels. 220,) which involved the same question, it is said : " If a man builds his house at the extremity of his land, he does not thereby acquire any right of easement, for support or otherwise, over the land of his neighbor. He has no right to load his own soil so as to make it require the support of that of his neighbor, unless he has some grant to that effect ;" and the American cases are, it is believed, to the same effect. (Thurston v. Hancock, 12 Mass. 221.)

Although not altogether in good taste, I repeat, as applicable to the present case, what I had occasion to say in a former case. It is a logical consequence from legal principles, that to the extent to which a person has a right to act, others are bound to suffer ; and that any damage that may accrue to them, while a person thus exercises his own rights, affords no valid ground of complaint. The loss occasioned in such cases is " *damnum absque injuria*." Every person, however, who is performing an act is bound to take some care in what he is doing. He can not exercise his own indisputable rights without observing proper precaution not to cause others more damage than can be deemed fairly incident to such exercise. In Wallars v. Pfeil, (Mood. & Malk. 364,) the plaintiff had neglected to take any precaution by shoring up their own houses within, or in any other way against the effect of pulling down the defendant's adjoining house ; and it appeared that this might have been so

done that the acccident would not have happened to the same extent. There was also evidence to show that the accident was owing to the bad foundation of the plaintiff's house; but there was conflicting evidence as to whether, by due care on the part of the defendant's workmen, the mischief might have been entirely avoided. In summing up, the chief justice of the queen's bench stated it to be now settled that the owner of premises adjoining those pulled down, must shore up his own in the inside, and do every thing proper to be done upon them for their preservation; but, although that had not been done, still the omission did not necessarily defeat the action, and that if the pulling down were irregularly and improperly done, and an injury were produced thereby, the person so acting would be liable, notwithstanding the omission of the plaintiff; and the jury were accordingly charged, that, if the defendant's house was pulled down in a wasteful, negligent and improvident manner, so as to occasion greater risk to the plaintiff than in the ordinary course of doing the work he would have incurred, then the defendant was liable to make compensation for the consequences of his want of caution; but that if they thought fair and proper caution had been exercised, then the defendant would be entitled to a verdict. The result of the cases, we think, is, (and such would seem to be the reasonable doctrine,) that, if a man in the exercise of his own rights of property do damage to his neighbor, he is liable, if it might have been avoided by the use of reasonable care; and it seems to be usual in England for a party intending to make alterations that may affect his neighbor's premises, to give notice of his intention; but whether any such duty be imposed by law (Town v. Chadwick, 8 Scott, 1) need not be inquired into here, as the present plaintiff knew of the digging and took measures to protect himself against the consequences of it.

These principles require us, we think, to reverse the judgment, and send the case back for a second trial. We do not think there is any error in the refusal of the defendant's first and fourth instructions. A party may subject himself to re-

sponsibility by the want of reasonable care, although his digging be confined to his own ground and do not exceed a reasonable depth ; nor is he protected by the fact that he used such care as his builder, who was a skillful and careful person, deemed necessary. The question is, as to the fact of negligence, whether the work were done in a careless and improvident manner, so as to occasion greater risk to the plaintiff than in the reasonable course of doing the work he would have incurred, and not whether, in the opinion of the superintendent, no matter how skillful he may have been, every thing was done that he deemed necessary. His opinion may be proper evidence to be considered by the jury, but it does not conclude the matter, constituting of itself a bar to the plaintiff's recovery. But the error is in plaintiff's third instruction, where an attempt is made to define, with precision, the degree of care that must be used in a case like the present, in order to exempt a party from liability ; and the standard there adopted is substantially that care that a prudent man, experienced in such work, would have exercised, if he had been himself the owner of the injured building. Now it is quite evident, we think, that this is going beyond the care that the law exacts upon such occasions. It is to be observed that the defendant was upon his own ground, and in digging upon it, exercised an undoubted right of property, which the plaintiff had no right, either by express grant or prescription—by statute or local ordinance—in any way to interfere with or prevent ; and although, in exercising his rights, it was certainly his duty to his neighbor to use ordinary care in order to avoid doing him harm, he was not bound to observe the same care that he would have taken, as a wise and sensible man, if he had been the owner of both buildings—the one erected and the one about to be erected. He would, of course, in that event, have shored up and would have submitted to many inconveniences, and, indeed, would have incurred considerable additional expense in doing the new work, rather than expose the building already erected to any risk. Every prudent person, in such a situation, would take precau-

tions—subject himself to inconveniences, and forego the exercise of every right that would endanger his present building, if he found it for his interest to do so. In the present case, if the laying of the new foundation, in very short sections, would have been attended with increased expense and with danger to the sufficiency of the new wall, and the defendant had been the owner of the plaintiff's building, he might have found it for his interest to have submitted, and most probably would have submitted, to this inconvenience and risk, and even increased expense, to avoid all hazard to his own property; yet the law does not exact of him the same forbearance and care and expense for the security of his neighbor's property that he would have found it for his interest to have taken for his own. We do not know that the instruction was intended, or indeed understood by the jury in the sense we impute to it. It may, however, have been so understood, and if so, could not but have misled them; and we shall therefore reverse the judgment, that the case may be retried upon a fuller understanding of the facts and of the law applicable to them.

The judgment is reversed, and the cause remanded.