## UNITED STATES v. PEACHY et al.

(District Court, S. D. Ohio, W. D.   August 28, 1888.)

1. ADJOINING LAND-OWNERS—LATERAL SUPPORT—INJURY TO ALLEY.

An owner of land abutting on an alley, who, in excavating, constructs a retaining wall inadequate to support the alley, which gives way and injures the sidewalk of the opposite owner, is not liable for the injury, in the absence of negligence.  And the employment of a competent architect and skillful workman negatives the charge of negligence, on the facts of this case.

2. PLEADING AND PROOF—DEPARTURE.

The petition alleged that the injury was caused by defendant negligently, carelessly, and unskillfully digging an excavation.  Held, that evidence that the injury was caused by the inadequate strength of a retaining wall of the excavation was not a departure.

At Law.   Action for damages.

Action by the United States against Henry Peachy and Charles Robson, administrators of George A. Smith, deceased, for an injury to the sidewalk of the federal building at Cincinnati, caused by the caving in of an alley which defendants' intestate had neglected to support by a sufficient retaining wall.

James Harlan Cleveland, Asst. Dist. Atty., for plaintiff.

Simeon M. Johnson and Albert Boettinger, for defendants.

HAMMOND, J.   The federal building at Cincinnati is bounded on one side by Patterson alley, one of the public ways of that city, and immediately opposite the defendant's intestate owned a lot upon which he erected an extensive building, used for business purposes.   The area wall of the intestate's building along his side of the alley, as at first constructed, was inadequate, by reason of which the structures of the alley gave way by caving, and the stone sidewalk of the government building, along its side of the alley, was injured to the extent of some $416, the cost of repairing it, as is agreed by the parties, so far as concerns the amount of damages.   This is a suit to recover that damage from the defendants.   The petition alleges that the said George H. Smith "did negligently, carelessly, and unskillfully dig, or cause to be dug, a cellar or excavation on his said lot to a depth of twenty-two feet below the curb, etc., by reason of which the bank of said excavation caved in," etc.   Both upon demurrer and by objections to testimony reserved until now the defendants insist that proof of inadequacy of strength in the retaining wall is a departure from this allegation of the petition, and is a different act of negligence from that alleged in the pleading.   Undoubtedly the best pleading required, I should think, that the precise act of negligence should be stated, if possible, although the law does not require one to put his evidence in his pleading.   Still, the building of the retaining wall is in every sense only a part of the excavation which was made. It is not one of the walls of the building, and has no connection with it as a part of its own structure, but is simply made to maintain an open

area in which to place the building, for purposes of ventilation and light, and fairly falls within the process of excavation, as is shown by the fact that it was done under a separate contract for the excavation.

It is not necessary to consider the niceties of the authorities upon this subject of pleading that have been so ably urged in arguments which, on all the points of this case, on both sides, have been instructive to the court, and entertaining as well, for, when everything is conceded to the learned counsel for the defendants that they can ask in that direction, the fact remains that the process of lining an excavation with walls, either **temporary or** permanent, is only a part of the work of excavation, and is so considered in the art of architecture as well as in the common comprehension of the subject. The objection, therefore, is not well founded, either to the pleading or the proof. Nor do I think it necessary to consider in any detail the elaborate arguments that have been made concerning the basis of the plaintiff's right of recovery, if there be such a right, or concerning the absence of any such basis for the claim of right, because, in my judgment, no case has been cited which is a precedent for this, or which considers facts sufficiently like those we have here in their relation to the subject. This may be said of all the cases, with the possible exception of *Keating* v. *Cincinnati*, 38 Ohio St. 141. But the arguments have developed the necessary legal considerations upon which the court can safely proceed to judgment, notwithstanding the want of any direct precedent, and without any search for cases outside of those cited by counsel. If these parties were the owners of contiguous lots or parcels of land, with no intervening strips or parcels belonging to others along the boundary line, or if they were owners of only adjacent or adjoining lands, with no streets or alleys to intervene, I should be unable to determine, without further reflection, precisely what an injury like this would impose in the way of liability for damages, if anything, particularly in view of the Ohio statute, so much commented upon in the argument, and the cases which have been cited that consider that statute. The law of lateral or subjacent support by way of easement is very delicate and complicated in its application to such situations as have been mentioned; and the Ohio statutes and cases have not, in my judgment, very much relieved those complications. It may be useful here to state that the statute does not seem to me to have destroyed the principle contained in the maxim, *sic utere tuo ut alienum non lædas,* whatever changes it may have made in the law of easements. Broom, Leg. Max. 328. It may, and probably does, impose new or modified standards of judgment in the matter of determining what is or is not negligence, either upon the one hand or the other, as between the neighboring owners, when they come to build either superficial or deep-laid structures upon their respective holdings, so that the law of easements as to lateral or subjacent supports has become regulated by this statute, and not by the general law of the subject, under circumstances which do not exist, in my judgment, in this case. Rev. St. Ohio, §§ 2676, 2677; *Burkhardt* v. *Hanley*, 23 Ohio St. 558; *McMillen* v. *Watt*, 27 Ohio St. 306; *Keating* v. *Cincinnati*, 38 Ohio St. 141; *Railroad Co.* v. *Pfau*, MSS. Op. AVERY, J., in

Hamilton Co. Dist. Ct.; Washb. Easem. 429, 444, 449, *et seq.;* Bigelow, Torts, 220.

But we have here the case of two abutting owners upon opposite sides of a street or alley in a city, and this action grows out of that situation in relation to the rights of the respective parties to the structures of the street, be they what they may, natural or artificial, as a means of support for their respective sidewalks or pavements, be they laid upon the street itself, or there be such extension of them as may come of laying the pavement upon one's own abutting land, which latter is this case. Now, when neighboring owners aggregate themselves into a city, and lay off streets and alleys, courts and parks, and the like, for their mutual use in building that city, can it be said that there is no right of mutual support or easement in the street or other such place for those walks and ways appurtenant to the abutting lots, without which the lots would be quite valueless, and the city itself an impossibility, almost? The principle is familiar that the derivation of ownership of only adjacent proprietors, from a common source, with specific intentions as to buildings for certain purposes, or with implied privileges in regard to certain uses, may create especial easements, not included in that strict and limited right of lateral support known to the common law as belonging to independent adjoining or adjacent owners of land. They are sometimes called "equitable easements," and are analogous to the easements that abutting owners on a street may have as a property implied from the nature of city building itself, and originating not in a common grant, perhaps, but in a common compact, express or implied, concerning the streets and their uses. Washb. Easem. 91, 106, 194, and *passim.* The right of every abutting owner, as well as the public, to the maintenance of a street intact, necessarily implies the right of the public and the abutting owner to whatever support is necessary, whether lateral or subjacent, for the street, from all the land that abuts upon it, and this whether the structures of the street be natural or artificial. That is the primary significance of the word "street" itself, considered with relation to its structure and its uses. It needs no citation of authority to establish that plain doctrine. Therefore, if the intestate, in the use of his land, whether proceeding on the notion of the general law as to his rights to dig and remove the soil therefrom, or on the notion of the Ohio statute, injures the street by destroying or displacing its structures, he is liable, not only to the public, but to his neighbors abutting on the street, for any injury peculiar to them growing out of their especial easements or rights to the street. And if by destroying the street the injury extends beyond its line on the opposite side, and impairs or destroys a sidewalk laid by the opposite owner upon his own land as a part of the public way, as this was, I do not see that the principle is affected; that is only the peculiarity of the damage done. Any other damage to the opposite property by the removal or destruction of the structure of the street, *qua* street, to the support of which that property was entitled mutually with the property of the wrong-doer, would be likewise actionable. But it is said that the allegations of the petition are not framed with reference to such a cause-

of action, and that such damages as have been here described are not sued for by the plaintiff. But that is a mistake. The petition does not describe, and need not, the nature of the right injured; but it states the facts very plainly, and asks to recover, because of the injury, the proper measure of damages,—the cost of repairs, namely.

Nevertheless, I do not find that, on the facts of this case, the defendant's intestate was guilty of any negligence in the premises. It is an exaggeration of the principle just stated to suppose that by reason of it the defendant became the insurer or guarantor of his opposite neighbor, the United States, against all injury by his building operations. He was only bound to proceed with due caution, as a reasonable man proceeds under like circumstances, to do the work in a skillful and workman-like manner, and that is all his neighbors can demand. He did this in every respect, employing skillful workmen, architects, and contractors. We may lay aside the most of the proof, and particularly that of the experts, engineers, architects, and contractors as to the precise cause of the disaster that befell the retaining wall. Like other experts in other departments of skilled knowledge, there is not much agreement among them in matters of opinion, or, rather, of the inferences of fact they draw from the given conditions. But this is immaterial, and we may take the testimony of the intestate's architect, who impressed me most favorably with his intelligence, fairness, and impartiality, in giving his testimony. He is as satisfactory a witness in these regards as it would be possible to have. He says it did not occur to him to examine critically or closely the peculiarities of the structures of the alley, and the government building opposite, when he first projected the wall that gave way; that he gave the best judgment he could form upon inquiry as to usual dimensions of similar walls in use in Cincinnati, and by consultation with other architects, contractors, and the recognized authorities in the art, and that he had not any doubt as to the sufficiency of the projected wall; that he has found that the area wall of this same lot on the Walnut-street front, a street very much wider, and with far more extensive traffic than is done upon the alley, has been sufficient, with precisely the same dimensions as those of the wall which gave way; that the subsequent caving of the alley has convinced him that it was insufficient, but that he does not know that, if that were not a demonstration of the weakness of the wall, that he would have changed his opinion, even if he had known more accurately that the government building had been constructed with the "batters" of its walls on the outside, instead of the inside, as is usual, and as he assumed the fact to be; that the substructure of the government sidewalk was of the character shown by the proof, consisting in part of a filling taken from the *debris*, with a curb foundation laid upon that filling, or through it, to the more substantial filling below it, and that the government excavation had cut into the alley structures some 18 inches beyond the curbing of the walk; and that the center of the alley had been perforated with a sewer. He thinks these peculiarities probably aggravated or increased the pressure on his wall, but that, whether they did or not, and whatever the conditions were, whether arising from greater

length of wall or all combined, that set in motion the forces of destruction, the facts show that the alley wall was not strong enough, although the Walnut-street wall was; and he has since projected and had placed one that is sufficient, of larger dimensions.    This was, at the most, a defective judgment, for which, under the circumstances, no negligence can be imputed to the architect, although there might have been a difference of opinion about it.    Nor do I think it can be said to be the result of any unskillfulness.    It is easy enough to say, after the fact of destruction, that the wall was inadequate, and it is surely true that greater strength would have been found in a larger wall, but every builder of a wall may and should consult economy in building, and it is not unreasonable to seek it within the bounds of ordinary prudence, as was done here.    So, treating the architect as a servant of the intestate, for whose negligence, under the law of master and servant, he would be liable, and there is no negligence in fact, except upon the theory that he is an absolute guarantor of safety to his neighbors, which is not the law.    And as to the intestate himself, having employed a competent architect of repute, he cannot be said to have proceeded negligently.    All that could have been required of him, if not an insurer of safety, was ordinary and reasonable prudence in the selection of his architect or other agents. Washb. Easem. 444, § 15, citing *Charless* v. *Rankin*, 22 Mo. 566, 574; *Panton* v. *Holland*, 17 Johns. 92, 100, 101.    No other negligence being imputed to the intestate, it is not necessary to consider the subject of contributory negligence in the alleged defective construction of the government sidewalk.    Judgment for defendants.