THE VICTOR MINING COMPANY, Respondent, v. THE MORNING STAR MINING COMPANY, Appellant.

Kansas City Court of Appeals, June 13, 1892.

1. **Lateral Support:** RIGHT NOT ABSOLUTE: NEGLIGENCE. The right to have one's soil left intact, and that no removal of the adjoining soil shall disturb its integrity, is not an absolute but a qualified right; but the removal of lateral support by excavation in the adjacent parcel is a violation of the right of property, and is actionable independent of the consideration, whether it was done with or without negligence.

2. **Mines and Mining:** LATERAL SUPPORT: NATURAL PRESSURE: CONTRIBUTORY NEGLIGENCE. The right to lateral support applies only to the land in its natural state and permanent condition, and not to its accidental circumstances, nor to the increased weight of the supported land by artificial structures, nor when its self-supporting power has been diminished; and the owner must show he has not contributed to the injury complained of. And where the plaintiff, in conducting his mining operations, has omitted to leave the pillars and other supports necessary to insure the absolute safety of the superincumbent surface, on which he has heavy structures, and operates machinery, he is not entitled to lateral support from his neighboring miner, and cannot enjoin such neighbor from mining, with ordinary care, up to the line between them, where the material is such that a perpendicular wall will sustain its own weight and the natural pressure thereon by the power of its own coherence.

3. ——: ——: CARE: EXTENT OF DOMINION. One mining near a division line is bound to observe proper precaution not to cause the adjoining proprietor more damage than would be fairly incident to prosecuting the work, and is liable for any injury negligently occasioned, but, subject to this condition, he has the entire dominion and the consequent right to occupy; and any damage to others, while he thus exercises his own rights, affords no valid ground of complaint.

4. **Injunction:** SOLVENT DEFENDANT: DAMAGES. In this case the defendants were solvent, and damages could have been recovered at law, and, besides, there was no ground for resorting to the extraordinary remedy by injunction.

*Appeal from the Jasper Circuit Court.*—HON. M. G. McGREGOR, Judge. ·

REVERSED.

*J. W. McAntire*, for appellant.

(1)   The plaintiff has an adequate and complete remedy at law. R. S., sec. 8675; *Pearson v. Inlow*, 20 Mo. 322; *Austin v. Coal & Mining Co.*, 72 Mo. 535; *Henry v. Low*, 73 Mo. 96; *Mays v. Tappan*, 23 Cal. 306; *Goller v. Felt*, 30 Cal. 481. In a suit for damages it was held that plaintiff was entitled to recover for the support taken from the adjoining soil so as to injure him. *Busby v. Holthaus*, 46 Mo. 161. (2)   Although every proprietor of the land has a right to the support of the soil of an adjacent lot as the natural servitude or easement, yet this servitude does not impose upon the adjoining proprietor the obligation of furnishing an increased support where the lateral pressure is increased by the erection of buildings, unless such a right of the servitude has been conferred by grant or the lapse of time, and a proprietor has no right to load his own soil so as to make it require the support of his neighbor, unless he has some grant. *Charles v. Rankin*, 22 Mo. 566; 12 Mass. 221. (3)   In an action for damages on account of an excavation, where a want of care and skill is charged and denied, it must be proved; negligence cannot be inferred from the facts of the excavation and the injury, where the injury might have happened without the excavation: *Ward v. Andrews*, 3 Mo. App. 275. (4)   Where the rights of adjoining proprietors are equal, then, in order to

recover damages, negligence and carelessness must be alleged and proved. Smith on Negligence, p. 4; *Crainer v. Hage*, 92 Mo. 511; 7 Wall. 460; *Kelly v. Railroad*, 101 Mo. 67; 96 Ill. 464. (5) To hold the law of lateral support to apply in the case, and to restrain the defendant from working to the line of his own claim, would be destructive of the rights of both parties, and the court, therefore, refused the injunction. *Hendricks v. S. V. M. & S. Co.*, 58 Cal. 190. This case is on all fours with case on trial. (6) It is a well-settled doctrine in this state that injunction will not lie where a party has a complete and adequate remedy at law. *Spitz, Landauer & Co. v. Kerfoot*, 42 Mo. App. 77; *Bailey v. Wade*, 24 Mo. App. 186; *Hopkins v. Lovell*, 47 Mo. 103; *Sternes v. Franklin & Co.*, 48 Mo. 167; *Damschroder v. Thias*, 51 Mo. 100. He who seeks equity must do equity. *Kline v. Vogel*, 90 Mo. 247–250.

*Spencer & Spencer* and *Cunningham & Dolan*, for respondent.

(1) It is elementary that every man shall so use his own property as to not unnecessarily injure his neighbor. From the general doctrine just stated has sprung the natural right of a man to the lateral support of the earth adjoining his land. In *Busby v. Holthaus*, 46 Mo. 161, and *Charles v. Rankin*, 22 Mo. 570, it is laid down that a man has a right to a support from the adjoining soil for his land in the natural state. 2 Wait's Actions & Defenses, 720. There is no question of weight or pressure on the surface in our case. But we present a few late cases to show, by analogy, how erroneous are counsel when they state that a man has a right to do as he pleases with his own property. *Mursch v. Burkhart*, 48 N. W. Rep. (Iowa) 1025;

*Davis v. Evans,* 13 N. Y. S. 437; 59 Hun, 618; *Dyer v. City of St. Paul,* 8 N. W. Rep. 272; *Nicholson v. City of Duluth,* 42 N. W. Rep. 84; s. c., 40 Minn. 389. (2) Peculiarly applicable to mines: High on Injunctions [3 Ed.] sec. 737; *Iron Co. v. Mining Co.,* 28 N. J. Eq. (1 Stew.) 77; *Lord's Ex'rs v. Mining Co.,* 38 N. J. Eq. 452. (3) An injury is irreparable when it cannot be measured by any certain pecuniary standard. *Wilson v. Mineral Point,* 39 Wis. 160; High on Injunctions [3 Ed.] sec. 735; *Popellwell v. Hodkinson,* L. R. 4 Exch. 248; *Moody v. McClelland,* 39 Ala. 45; *Baird v. Williamson,* 15 C. B. N. S. 376; *Tillotson v. Smith,* 32 N. H. 90; *Coal Co. v. Gorrell,* 9 Phil. Rem. 247; *Hay v. Cohoes Co.,* 2 N. Y. (2 Comst.) 15 9. (4) Plaintiff had no remedy but injunction. R. S. 1889, sec. 5510. "Prohibition," as used in the above section, means, in a general sense, of a restraint by injunction. *Casby v. Thompson,* 42 Mo. 133. The following authorities illustrate the growing tendency to extend the remedy by injunction. *Brewing Co. v. Water-Works Co.,* 34 Mo. App. 49; *Dry-Goods Co. v. Railroad,* 41 Mo. App. 63; *Findley v. Findley,* 93 Mo. 495; *Towne v. Bowers,* 81 Mo. 491; Pomeroy on Equity Jurisprudence, sec. 37. Solvency or insolvency of the defendants makes no difference. *Brewing Co. v. V. Co.,* 34 Mo. App. 49; *Towne v. Bowers,* 81 Mo. 491; *Turner v. Stewart,* 78 Mo. 480; *Bank v. Kircheval,* 65 Mo. 682. And especially when the subject of litigation is mines. High on Injunctions [3 Ed.] sec. 730, note 1.

SMITH, P. J.—The plaintiff, an incorporated mining company, brought its action to enjoin the defendants, who were a partnership engaged in mining operations under the name of the Morning Star Mining Company, from mining lead and zinc ores on

their own land at and near the line dividing it from that of the defendants. Plaintiff had opened a drift from forty to fifty feet high, and about three hundred feet long up to and along the dividing line between its mine and that of defendants. The defendant had opened a drift on its side of the line about twenty feet wide and one hundred feet long, so that the two drifts of plaintiff and defendants formed one large subterranean chamber. Neither party had any interest in the mine of the other. The defendants were enjoined for four months from mining closer than five feet of the line dividing the mines, unless the plaintiff should sooner get to the same level the defendants were then working, which was about twenty feet below that of plaintiff's mine The pleadings and evidence are quite voluminous, and it would serve no useful purpose to make any further reference to either than has already been and will be hereafter made. It seems that the principal question involved is that of lateral support in working deep mines, and it is to the consideration of this we shall address ourselves.

The principle is elementary that every land-owner has a right to have his soil preserved intact as against its own weight and the ordinary effects of the elements, and an adjoining owner who excavates so near to the line of his neighbor's land, as to cause the same to crumble or fall away, is liable for all damages ensuing therefrom; but if the character of the adjoining soil is such that it will and does sustain its own weight and the natural pressure thereon, by the power of its own coherence, without the aid of the support of the surrounding soil, the *adjoining owner may remove his soil without liability to damage.* No damage is recoverable unless there has been an actual disturbance of the integrity of the soil. The right that every man is entitled

to have his soil left intact, and that no removal of the adjoining soil can be made so as to disturb the integrity of the soil of others, is not an absolute but a qualified right. Wood on Nuisances, secs. 171, 172; *Farrand v. Marshall*, 1 Barb. (N. Y.) 380; *Richardson v. Railroad*, 25 Vt. 469; *Thruston v. Hancock*, 12 Mass. 220; *Moody v. McClelland*, 39 Ala. 45; *Foley v. Weyeth*, 2 Allen, 131; *McGuin v. Grant*, 25 N. J. 356; *Smith v. Thaeknah*, L. R. 1 C. B. 564.

Mr. Washburn, in his work on easements and servitudes, 542, quotes the following language from the late writer in the London Law Magazine and Reporter, to the effect: "But the right being a right to support from the land in its natural state, on the one hand, it includes only the right to such support as is furnished by the permanent conditions of land, and not by its accidental circumstances, and on the other hand if the support required is increased, either by increasing the weight of the supported land or by diminishing its self-supporting power, no right exists to have *this additional* support supplied by the neighboring land, and no subsidence resulting from this cause gives a right of action." To hold one liable for an injury to adjacent land arising from his digging in his own, that what he did *contributed* to the injury of the other, the latter must show that he did not himself contribute to the injury complained of. *Smith v. Hardesty*, 31 Mo. 412; Washburn on Easements & Servitudes, 553.

In respect to land it has been held to be an invariable rule of property that a removal of its lateral support by excavation in the adjacent parcel is a violation of the right of property, and is actionable independent of the consideration, whether it was done with or without negligence. Now, conceding for the purpose of the argument, that the right of lateral support in a case of this kind is as much an incident as it is to the

soil of land, the pertinent inquiry arises, can the decree even then be sustained? The inference is indisputable that if the defendants had in prosecuting their mining operations, excavated up to the division line for the full depth of their mine, the underlying foundation of the plaintiff's land would, until cut away, have presented a solid perpendicular wall which would have sustained its own weight and the natural pressure thereon by the power of its own coherence without requiring the lateral aid of any support whatever. Neither the wall nor the surface of the ground above it would have caved in or given way in consequence of the withdrawal of the "selvedge flint coal tar" and other material by the defendants from their side of the dividing line. The natural conditions on the plaintiff's side up to that point would have remained unchanged. The integrity of the plaintiff's land in all of its entirety would have remained intact in so far as it would have been affected by the defendants' mining operations. Nothing that the latter had done would have been the slightest invasion of any property right of the plaintiff.

But the plaintiff sunk a number of shafts south of the dividing line to a considerable depth, and from thence projected drifts in the direction of and through the division walls so as to connect with the defendants' opening for quite a distance. The plaintiff excavated an extensive subterranean room, and in doing so it cut to and through the dividing line. Before this was accomplished, the defendants proposed to it that they should each leave along and near the dividing line alternate pillars to support the superincumbent roof. This business-like proposition, the plaintiff declined to accept. The evidence conclusively shows that the plaintiff, in the conduct of its mining operations, has omitted to leave the pillars and other supports necessary to insure the absolute safety of the superincumbent

surface. It claims that the heavy structures and machinery which it has erected and is operating on the surface above the mine are liable to subside, without the subjacent support afforded by the conditions of the defendants' mine at the time of the decree were continued until it excavated its mine to the same depth that the defendants' mine then was. The conclusion deducible from all the evidence is irresistible that the plaintiff has no right to have the additional support supplied by the configuration of the mine of the defendants for the obvious reason that the plaintiff, by the conduct of its mining operations, so increased the weight of the supported land and diminished its self-supporting power as to render the support furnished by the natural and permanent condition insufficient, which otherwise was sufficient.

Besides this, the evidence does not show that the defendants threatened or contemplated taking down the pillar on its own ground which the plaintiff claims is necessary for ·the support of the roof of the mine of the latter. And, for the reasons already sufficiently indicated, the pillar on the plaintiff's side of the dividing line was not entitled to the lateral support of the ground in its vicinity on the side of the defendants. The change which the plaintiff had wrought in the permanent conditions there were such that it could not invoke the principles of the law of lateral support for the purpose of restraining defendants from taking out the "stope" on its own land, provided they did so in an ordinarily careful manner. The plaintiff's pillar was left within a few feet of the dividing line. In *Thruston v. Hancock, supra*, it was said: "A man who himself builds a house adjoining his neighbor's land ought to foresee the probable use by his neighbor of the adjoining land, and by convention, or by different arrangement of his house, secure himself against

future interruption and inconvenience." And in
*Farrand v. Marshall*, 19 Barb., *supra*, it was stated:
"When a party, complaining of an injury, has himself
erected buildings upon the margin of his own land, he
has been regarded as himself at fault, and, therefore,
not entitled to recover, upon the familiar doctrine that
he who complains of the use which another makes of
his own property must himself be free from fault."
In *Charles v. Rankin*, 22 Mo. 566, there is a distinct
recognition of the English rule: "When, however, the
lateral pressure has been increased by the erection of
buildings it seems to be well settled at common law by
the authorities that no man has a right to an increased
support unless he had acquired such a servitude by grant
or prescription."

There is, also, there quoted with approval the fol-
lowing extract from *Partridge v. Scott*, 3 Mees. & W.
220: "If a man builds his house at the extremity
of his land he, does not thereby acquire any right of
easement for support or otherwise over the land of his
neighbor. He has no right to load his own soil so as
to make it require the support of that of his neighbor
unless he has some grant to that effect." If the plain-
tiff had not itself excavated the ground in and about
the pillar so as to cause the superincumbent roof to cast
an increased weight upon the point upon which the
pillar stood, it would not have been endangered by the
removal of the lateral support offered by the ground of
defendant. *Busby v. Holthaus*, 46 Mo. 161. Applying
the principles of the rules to which we have just
referred, we must conclude that the plaintiff had no
right to have the defendants hampered and restrained
from mining in an ordinarily prudent manner on their
own land in the vicinity of the base of the plaintiff's
pillar. For aught that appears, the defendants had

the right to mine there without hinderance from the plaintiff.

But, in doing so, the defendants were bound to observe proper precaution not to cause the plaintiff more damage than would be deemed fairly incident in prosecuting the work. It was the duty of the defendants to use ordinary care in their mining operations in order to avoid doing plaintiff any harm. *Charles v. Rankin*, *supra*. If the defendants, in taking out "stope" along the dividing line, failed to exercise ordinary care, or, which is the same thing, did so negligently, whereby there was a caving in or sliding down of the ground from the plaintiff's side; or whereby other injurious consequences ensued, the defendants would be liable therefor.

It is a common principle of the civil and common law that the proprietor of land, unless restrained by covenant or custom, has the entire dominion, not only of the soil, but of the space above and below the surface to any extent he may choose to occupy it. Mr. Justice LEONARD, in *Charles v. Rankin*, 22 Mo. 566, declared it to be "a logical consequence from legal principles, that, to the extent to which a person has a right to act, others are bound to suffer; and that any damage that may accrue to them, while a person thus exercises his own rights, affords no valid ground of complaint. Such damage is *damnum absque injuria*. There is no evidence tending to prove that defendants threatened to prosecute their mining operations without the exercise of the ordinary care enjoined by law.

But, if so, since the defendants are admitted to have been entirely solvent, there seems to be no reason why the plaintiff may not be fully compensated in damages for such injurious conseqüences recoverable in an action at law. There further seems to us to have been no grounds for resorting to the extraordinary

remedy by injunction, since the law afforded plaintiff an adequate remedy for the injury threatened. R. S., sec. 5510; *Spitz v. Kerfoot*, 42 Mo. App. 77; *Bailey v. Wade*, 24 Mo. App. 186.

Since the period for which the injunction was granted has expired, we suppose that the only real matter left in the case is that of costs. But, however that may be, we have been compelled to give the case the same consideration as if the injunction had been a perpetual one.

It results that the decree must be reversed. All concur.