## EASTER *v.* DUNDALK HOLDING CO.

[No. 99, October Term, 1951.]

*Decided February 13, 1951.*

*Motion for rehearing, filed March 10, 1951, denied March 12, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

HENDERSON, J., delivered the opinion of the Court.

The appellant in this case brought an action at law for damages based on a loss of lateral support. It was tried by the court without a jury, and resulted in a judgment for the defendant. The court held that the action was barred by the statute of limitations, which was specially pleaded.

Easter owned a vacant lot fronting on the west side of Belair Road about 684 feet. The entire frontage was from eight to ten feet above the level of the street. He sold the corner lot with a frontage of one hundred feet to the Gulf Oil Corporation. The purchaser graded the lot to the level of Belair Road and erected a gasoline station. On July 23, 1945 Easter sold the defendant

the adjoining lot with a frontage of 250 feet. This left the plaintiff an unimproved lot with a frontage of about 334 feet. The defendant graded its lot to street level and erected a moving picture theatre. In doing so it left a vertical cut at or over the dividing line. The entire job of grading was begun September 14, 1945 and finished October 16, 1945. Suit was filed on April 22, 1949. The appellee contends, and the court held, that the plaintiff's right to sue accrued when the cut was made, and this was more than three years before suit. The appellant contends that the court erred in that the period of limitations does not run from the time of the removal of support, but from the time when the damage occurs.

Schwaber, the president of the defendant corporation, testified that he told Easter he intended to grade the lot before he bought it, and suggested that Easter grade his lot at the same time. Easter declined to do so, but tried to sell him the adjoining lot. Later, Schwaber proposed to erect a wall on the defendant's lot to prevent erosion. This would have required the erection of groins running over the line, and temporary access to the Easter lot to pour the concrete. Easter threatened to shoot him if he set foot on his lot. Easter testified that Schwaber agreed to put up a retaining wall, but simply neglected to do so. Instead he insisted that Easter remove certain trees near the line, went on Easter's lot and cut them without permission, and early in 1947 "sniped off" part of the cut on Easter's lot, grading it to forty-five degrees. Since it was not seeded, the erosion continued. When he realized that Schwaber was not going to build a wall, he threatened suit. Schwaber never asked his permission to go on his property to build a wall.

However this may be, erosion began, as might have been expected, as soon as the cut was made. On November, 4, 1945 Schwaber wrote Easter: "We have had considerable rain and there is quite a bit of erosion on this bank." He asked permission to take down, at his own expense, a large tree on Easter's lot that was

in danger of falling on the theatre. Easter never replied to this letter.

The common law rule that the owner of land in its natural condition is entitled to lateral support has been recognized in Maryland as a property right, not dependent upon proof of negligence. *B. & P. RR. Co. v. Reaney*, 42 Md. 117, 135; *Shafer v. Wilson*, 44 Md. 268; *Mullan v. Hacker*, 187 Md. 261, 266, 49 A. 2d 640. See also 3 *Tiffany, Real Property* (3d ed.) § 752. These were cases of injury to structures and no question of limitations was involved. In the *Reaney* case, however, Judge Alvey cited the English case of *Bonomi v. Backhouse*, (1859) El. Bl. & El. 646; affirmed in *Backhouse v. Bonomi* (1861) 9 H. L. Cas. 503, for the proposition that an action is maintainable, not from the moment a lawful excavation is made, but from the time when some damage arises therefrom. Also cf. *Maberley v. Peabody & Co.* (1946) 2 All E. R. 192. It follows that limitations does not start to run until damage occurs. The weight of American authority supports this view. See note, 26 A. L. R. 1235. This is the view taken in the Restatement. 4 *Restatement, Torts*, § 817 (i). In this respect the rule seems to be different in lateral support cases from the rule in actions for negligent construction or trespass by encroachment. Cf. *Callahan v. Clemens*, 184 Md. 520, 527, 41 A. 2d 473. The later English cases hold that recovery may be had for each successive damage "as and when it occurs", whether the damage be recurrent or continuous. *Darley Main Colliery v. Mitchell*, L. R. 11 A. C. 127; *Crumbie v. Wallsend*, [1891] 1 Q. B. 503; *West Leigh Colliery v. Tunnicliffe*, [1908] A. C. 27. See also 3 *Sedgwick, Damages*, ( 9th ed.) § 925. These were mining cases, involving injury to structures as well as land.

The appellant contends that although the damage due to erosion prior to April 22, 1946 may be barred, the subsequent damage is not barred and is recoverable. The cases cited tend to support this view, although we may observe that there is a possible distinction between

the latent danger of subsidence through the removal of subjacent support and the patent loss of lateral support through erosion. But if we assume that the principle is applicable and that the damages within and without the period of limitations are separable, there is no evidence to support an award of damages subsequent to the date mentioned.

The general rule is stated in Sedgwick, *supra* (p. 1905): "the measure of damages [is] ordinarily the diminution of value of the land caused by the fall". See also *Sutherland, Damages* (4th ed.) § 1053 and 4 *Restatement, Torts* § 912, p. 577. In *Mullan v. Hacker, supra,* it was said (p. 270): "There is no question that the measure of damages for property is the cost of restoring it, if it can be restored to the condition it was in before the injury without cost disproportionate to the injury; but where the cost of restoring is greater than the diminution of the market value, the correct measure is the difference between the value of the property before the injury and after." In *West Leigh Colliery v. Tunnicliffe, supra,* it was held that damages for injury to land, as distinguished from a structure, could not include depreciation in the market value of the property attributable to the risk of future subsidence. Lord Macnaghten said (p. 30): "the right of the surface owner is [not] a right in the nature of an easement, or a right to have pillars of support left for his security * * * [but] merely the right of a landowner to the ordinary enjoyment of his land."

Applying these principles to the instant case, it is perfectly clear that the cost of building a retaining wall would be extremely costly and of no real benefit to the plaintiff. Moreover that would not be the proper measure of damages. 4 *Sutherland, Damages, supra.* If all of the soil were removed from the plaintiff's lot to street level it would enhance the value of the property. There is no evidence of a diminution in the value of the lot, which is only suitable for commercial development, and the plaintiff's own testimony indicates that he intends

to use it or sell it for that purpose. He does not live on the land. In its present condition it is not suitable for growing anything except perhaps the kind of tree that grows in Brooklyn. His personal enjoyment is not affected. The fact that some soil is lost by erosion of the bank along the dividing line is not a substantial injury to him; the chief sufferer is the defendant, who is faced with the necessity of removing mud and debris and the continuance of an unsightly condition adjoining its theatre. As stated in 4 *Restatement, Torts,* § 817 (i) *supra* (p. 193) : "to make the actor liable, the subsidence must be substantial. The rule that the law will not concern itself with trifles is applicable."

*Judgment affirmed, with costs.*