Dean A. LUSARDI, M.D. and Donna Lusardi, Plaintiffs/Respondents,

v.

KENSINGTON BUILDING CORPORATION, Defendant/Appellant.

No. ED 85063.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 29, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 24, 2006.

Application for Transfer Denied
Feb. 28, 2006.

I.I. Lamke, Isidore I. Lamke, Washington, MO, for appellant.

Eckelkamp Kuenzel LLP, Steven P. Kuenzel, Washington, MO, for respondent.

## OPINION

MARY K. HOFF, Presiding Judge.

Kensington Building Corporation (Kensington) appeals the monetary judgment the trial court entered, after a non-jury trial, on the claim of Dean A. Lusardi, M.D., and Donna Lusardi (the Lusardis) for injunctive relief or damages based on the loss of lateral support for the Lusardis' property due to Kensington's excavation and building of a retaining wall on property abutting the Lusardis' property.

Kensington pursues two points on appeal.[1] In its first point, Kensington argues the trial court erred in entering judgment in favor of the Lusardis because there was

---

1. Both of Kensington's points on appeal urge the trial court erred in "granting [the] Lusardi[s] a mandatory injunction that Kensington rebuild a retaining wall on Kensington's lot."

A review of the record reveals, however, that the trial court did not grant a mandatory injunction. Instead, after making its findings, the trial court concluded in its judgment as follows:

[w]herefore this Court finds that [the Lusardis] have carried their burden of proving that [Kensington]'s construction of the wall was defective and unsafe, that it did not provide sufficient lateral support to [the Lusardis], and that [the Lusardis] have been damaged by these facts in the sum of $8891.02 plus costs.

We read this judgment as awarding damages only and not as imposing a mandatory injunction.

not substantial evidence of the natural condition of the Lusardis' lot and of the failure of the retaining wall to support the Lusardis' lot in its natural condition, due to the evidence of fill dirt on the Lusardis' property in the area of the excavation and retaining wall. In further support of this point, Kensington urges the trial court erred because the Lusardis failed to show the danger to their lot was imminent, any future damage to their lot would be irreparable, or that they would not have an adequate remedy at law for any subsidence that may occur. In its second point, Kensington contends the trial court's judgment in favor of the Lusardis is contrary to law in that there is no cause of action until there is a substantial subsidence of the Lusardis' lot and no such subsidence has occurred. We find the second point dispositive and, therefore, will not further address point one.

■ We sustain the judgment in a non-jury case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Lewis v. Gibbons*, 80 S.W.3d 461, 466 (Mo. banc 2002); *Bruns v. Green*, 157 S.W.3d 368, 371 (Mo. App. E.D.2005).

■ For its second point, Kensington contends the trial court's judgment in favor of the Lusardis is contrary to law in that there is no cause of action until there is a substantial subsidence of the Lusardis' lot and no such subsidence has occurred. In support of the argument that substantial subsidence is a necessary element of this cause of action, Kensington cites to *Easter v. Dundalk Holding Co.*, 199 Md. 324, 86 A.2d 477, 480 (1952). The Lusardis counter that they find no Missouri authority adopting the "substantial subsidence" requirement urged by Kensington, and

that a case cited in Kensington's brief, *Colombo v. Peters*, 32 N.J.Super. 593, 108 A.2d 657 (1954), supports the ordering of a defendant to supply artificial lateral support at the defendant's expense under certain circumstances despite the absence of actual subsidence.

■ Since at least 1856, Missouri has recognized a cause of action for the withdrawal or loss of the lateral support for one's land. *Charless v. Rankin*, 22 Mo. 566 (1856). "The right to support from the adjoining soil may be claimed either for the land in its natural state, or for it subjected to an artificial pressure by means of building or otherwise." *Id.* at 570. The parties have not directed us to any Missouri authority expressly addressing whether or not "substantial" subsidence is an element of such a cause of action. There is, however, an early case from the Western District that addressed the type of property damage needed to support a lateral support claim, *Victor Mining Co. v. Morning Star Mining Co.*, 50 Mo.App. 525 (Mo.App. W.D.1892).

In that case the plaintiff mining company sought an injunction prohibiting the defendant mining companies from mining on their side at or near the dividing line between the parties' two mining operations, which were on adjoining properties. *Id.* The trial court enjoined the defendants "for four months from mining closer than five feet of the line dividing the mines, unless the plaintiff should sooner get to the same level the defendants were then working, which was about twenty feet below that of [the] plaintiff's mine." *Id.* at 529. In reversing, the Western District characterized the principal question as involving lateral support in working deep mines [2] and stated in relevant part:

---

**2.** "The rules governing the right to lateral support are the same for subsoil as for surface

The principle is elementary that every land-owner has a right to have his soil preserved intact as against its own weight and the ordinary effects of the elements, and an adjoining owner who excavates so near to the line of his neighbor's land, as to cause the same to crumble or fall away, is liable for all damages ensuing therefrom; but if the character of the adjoining soil is such that it will and does sustain its own weight and the natural pressure thereon, by the power of its own coherence, without the aid of the support of the surrounding soil, the *adjoining owner may remove his soil without liability to damage.* No damage is recoverable unless there has been an actual disturbance of the integrity of the soil.

*Id.* (emphasis in original). Due to the subsurface supports in the plaintiff's mining area, the Western District concluded that "[t]he inference is indisputable" that, even if the defendants had mined up to the dividing line between the two mining operations,

[n]either the wall nor the surface of the ground above it would have caved in or given away in consequence of the withdrawal of . . . material by the defendants from their side of the dividing line. The natural conditions on the plaintiff's side up to that point would have remained unchanged. The integrity of the plaintiff's land in all of its entirety would have remained intact in so far as it would have been affected by the defendants' mining operations.

*Id.* at 531. The court of appeals went on to conclude "the defendants had the right to mine [in an ordinarily prudent manner on their own land in the vicinity of the plaintiff's land] without hind[ ]rance from the plaintiff." *Id.* at 533–34. The Western District observed,

[i]f the defendants, in taking out [the material] along the dividing line, failed to exercise ordinary care, or . . . did so negligently, whereby there was a caving in or sliding down of the ground from the plaintiff's side, or whereby other injurious consequences ensued, the defendants would be liable therefor.

*Id.* at 534. The appellate court found no evidence the defendants would fail to exercise the ordinary care required for such mining, and found that the defendants were solvent so that the plaintiff could "be fully compensated in damages for [any] injurious consequences recoverable in an action at law." *Id.* Therefore, the Western District concluded, there were "no grounds for resorting to the extraordinary remedy by injunction, since the law afforded [the] plaintiff an adequate remedy for the injury threatened." *Id.* at 534–35.

The Western District subsequently recognized that the lateral support doctrine, including the principle that "[n]o damage is recoverable unless there has been an actual disturbance of the integrity of the [plaintiff's] soil," has been followed because "our own courts have held to the same doctrine without a break." *Gates v. Fulkerson,* 129 Mo.App. 620, 107 S.W. 1032, 1034 (1908). Therefore, "the mere fact the defendants excavated the lot up to the line between themselves and the plaintiff, and thereby removed the lateral support of [the plaintiff's] land, afforded [the plaintiff] no cause of action against them for so doing. It should have been shown that in so doing they failed to use ordinary care, *which resulted in an injury to [the] plaintiff's lot."* *Id.* (emphasis added). The Western District found the evidence tended to show the defendants' excavation did not cause the caving in and falling off of plaintiff's lot, and so the Western Dis-

support." *Carpenter v. Reliance Realty Co.,* 103 Mo.App. 480, 77 S.W. 1004, 1007 (1903).

trict reversed and remanded for the trial court to set aside the order granting a new trial and enter judgment on the jury verdict in favor of the defendants. *Id.*

 We discern from these cases that some damage or injury to the plaintiff's property must occur before the plaintiff may establish a neighboring property owner's liability for damages for the withdrawal of lateral support, and, at least some physical change or disturbance in the property is necessary to establish such damage or injury. Such a physical change in property is a "subsidence." In the discussion of the cause of action for the loss of lateral support in the Restatement of the Law of Torts, "[a] subsidence [is defined a]s any movement of the soil from its natural position. This movement may be in any direction. It may be of surface or subsurface soil. A shifting, falling, slipping, seeping or oozing of the soil is a subsidence" for purposes of a lateral support claim. Section 817 of the Restatement of the Law 2d, Torts 2d, Comment h on Subsection (1) (1979).

██ We conclude, therefore, that a subsidence of the plaintiff's land is necessary to state a cause of action for damages for the withdrawal of lateral support. This concurs with the view of a cause of action for the withdrawal of lateral support in the Restatement. Sections 817 and 819 of the Restatement state that a landowner who withdraws the naturally necessary lateral support of another's land "is subject to liability for a subsidence ... [and] for harm to artificial additions resulting from the subsidence" of the other's land or, when liability is based on the defendant's negligence, the defendant is liable "for harm resulting to the other's land and to the artificial additions on it." Sections 817 and 819 of the Restatement of the Law 2d,

Torts 2d (1979). Our conclusion is also supported by our decision in *McGurn v. Reichel,* in which we found a petition for injunctive relief sufficiently stated a cause of action for loss of lateral support of the plaintiffs' land after the defendants excavated on the defendants' adjoining land. *McGurn v. Reichel,* 268 S.W. 399 (Mo.App. E.D.1924). The allegations we found sufficient included allegations that the plaintiffs' land "cave[d] in and f[e]ll away" as a result of the defendants' excavation on the plaintiffs' adjoining land. *Id.* at 402. In particular, the petition alleged

> that [the] defendants destroyed the lateral support to which [the] plaintiffs' property is entitled, by digging down [the] defendants' land; that the land is thereby caused to cave in and fall away into a hole made into [the] defendants' property, and that the defendants will continue to remove the earth by their digging away such property, unless restrained by an injunction[,] ... that [the] plaintiffs' property is made worthless by this conduct of [the] defendants, and that irreparable damage will ensue by the washing away of the lot unless [the] defendants are restrained.

*Id.*

While we conclude a subsidence is necessary for a loss of lateral support claim for damages, we need not determine the extent of subsidence required because here the allegations of the Lusardis' one count petition do not mention *any* subsidence has occurred or is imminent as a result of Kensington's excavation and building of the wall. After setting forth allegations regarding the status and property ownership of the parties,[3] and the excavation by Kensington, the petition contains the following allegations:

**3.** The record reveals that Kensington no long- er owns the lot at issue in this case.

5. That thereafter [Kensington] negligently erected a defective retaining wall, which was not sufficient to laterally support the property of [the Lusardis]; that thereafter [the Lusardis] complained to [Kensington], at which point, [Kensington] removed said retaining wall and erected a second negligently constructed retaining wall, which [the Lusardis] have been advised will not laterally support [the Lusardis'] property, and which will subject [the Lusardis] and their guests and invitees to the risk of personal injury and financial loss when said retaining wall gives way....

6. That [the Lusardis] have had said retaining wall reviewed by a licensed engineer and made certain recommendations to [Kensington] by which [Kensington] could shore up said excavation and retaining wall to prevent the likelihood of future injury and damages to [the Lusardis], but [Kensington] has failed and refused to take the steps necessary to make said retaining wall safe.

7. That [the Lusardis] have no adequate remedy at law and request th[e trial c]ourt to issue an injunction mandating that [Kensington] make said wall structurally sound and safe so as to prevent future injury to [the Lusardis] and their guests and invitees; or in the alternative, that [Kensington] be ordered to pay such damages as will be necessary to hire an independent third party to make said wall safe and further to enter a mandatory injunction that [Kensington] allow said third party onto its property in order to make the necessary repairs.

The "WHEREFORE" paragraph follows those allegations. Without more regarding a physical change in the Lusardis' property as a result of Kensington's excavation and building of a retaining wall on Kensington's own property, the Lusardis do not have a cause of action for damages for the loss or withdrawal of lateral support from their land.

Due to the Missouri case law on which we rely and the fact that, under the circumstances of this case, we need not ascertain the extent of the subsidence necessary for a cause of action for the withdrawal or loss of lateral support, we will not discuss the non-Missouri cases on which the parties rely.

In addition to the absence of any indication of past or imminent subsidence in the petition's allegations, the trial court record does not establish that, at the time of trial, subsidence of the Lusardis' property had occurred or was imminent. Dr. Lusardi testified that, in terms of grade, "[t]here's been no significant change to the[ir] property." The Lusardis' expert, Edward T. Austin, testified only that he thought "the wall is going to fail. It's just a matter of when"; in his experience with retaining walls of this height, "over time the top of the wall tends to move out ... [and, as it does,] the soil behind it sinks and the Lusardi soil would sink as the wall moves out"; and, he did not know when or where the wall will fail but, if it fails, "two to ... four feet, within [the Lusardis'] property line would slide downward toward the Kensington lot." Lawrence A. Rice, an officer and employee of Kensington, testified that, based on his personal inspection of the wall the day before trial, there had been no shifting or sinking of the Lusardis' soil at the retaining wall.

Under the circumstances, the trial court erroneously applied the law by awarding damages to the Lusardis in their cause of action for the withdrawal of lateral support

in the absence of a subsidence of their property.

Point two is granted.

The judgment in favor of the Lusardis is reversed.

CLIFFORD H. AHRENS, Judge and PATRICIA L. COHEN, Judge, Concur.