BRIDGET McGRATH et al. v. CITY OF ST. LOUIS and HEMAN CONSTRUCTION COMPANY; CITY OF ST. LOUIS, Appellant.

Division Two, December 15, 1908.

1. **DAMAGES TO PRIVATE PROPERTY: Public Improvement: City a Trespasser: By Contract.** Where the ordinances and plats on file showed that a public alley had already been established ten feet wide, before the contract for the paving of the alley was made, and that the contract required the work to be done in conformity with such plans, it cannot be said that the city by its contract with the contractor necessarily required him to commit a trespass on the abutting property even if he did excavate the alley more than ten feet wide. If he went beyond the line of the public alley as established by the city, and excavated under the foundation of the abutting property, when the contract called for the improvement of the alley alone, it cannot be said that under the contract the city is liable for the damages on the theory that the work required of the contractor necessarily involved a commission of a trespass upon the adjoining property because the alley was not in fact ten feet wide.

2. ————: ————: ————: **By Action of Subordinate Officer.** The city is not liable for damages done to the abutting property by the excavation because a subordinate officer of the city, an inspector, told the contractor for the public improvement to make the excavation under the foundation of the abutting house. No subordinate officer has authority to make a change in the city's contract with the contractor.

3. ————: ————: ————: **By Contractor.** For a trespass upon the abutting property by the independent contractor for the alley paving, the city is not liable, if his contract with the city required no such trespass, and he was not instructed by any properly authorized representative of the city to commit the trespass.

4. ———: ———: ———: **Reasonable Plan: Independent Contractor.** Where the plans of the city for doing the public work are reasonable, and the work contemplated if properly done would not necessarily cause injury to the abutting property, and the contractor is an independent one, the city is not liable for the injury done, if the injury was not done by the city's direction. The mere fact that the wall of the abutting house cracked and fell out in the alley, is not sufficient of itself to authorize the owner to recover damages from the city. Some negligence must be established against the city, and if there was no negligence in the plans adopted, or in requiring the paving and grading to be done in accordance therewith, the city is not liable. And as a matter of law there is no negligence in a plan that requires an excavation wholly within a public alley to be carried to a lower level than the foundation of the abutting building.

5. ———: ———: ———: **Independent Contractor: Superintending His Work.** A power in the contract to the city to superintend the construction of the public work and to see that the contract is complied with, does not make the contractor an agent of the city or deprive him of his character as an independent contractor. Where the purpose of certain provisions of the contract is merely to secure by way of proper supervision and inspection a compliance with the contract, and they in no sense release the contractor from his obligations to perform the contract as such and not as agent, they do not constitute him the agent of the city, but he is an independent contractor.

6. ———: ———: ———: **Notice.** Where the owners of the property abutting on the alley to be graded and paved knew for two weeks after the work was begun at the next street and progressed towards their property, that the excavation would include the entire alley as established by ordinance and that the excavation would affect the foundation of their house, and made no effort to shore it up or protect it, they cannot complain that they had no formal notice from the city of the commencement and progress of the work. They had actual notice for a reasonable length of time, and where there is actual notice, and the city's plan if carried out in a reasonable manner did not necessarily embody danger to the house, no written notice to them by the city was required.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

REVERSED AND REMANDED (*with directions*).

*Charles W. Bates* and *Benjamin H. Charles* for appellant.

(1)   Plaintiffs' evidence did not establish the fact that the city did any excavating at all, and the contract between the city and the contractor which plaintiffs introduced authorized the contractor to excavate in the alley alone.   There was, therefore, as to the city, a failure of proof of the first assignment of negligence.   The evidence fails to show that the city operated at any place outside of the alley, or that it authorized the contractor to do so.   Plaintiffs having introduced the contract in evidence, and having thereby established the fact that the city authorized the contractor to operate in the alley alone, no willful trespass of the contractor could become the trespass also of the city merely because the work which was being done was public work done for the city.   (2) There was no negligence whatever in the plan adopted by the city.   The excavation for the alley paving was, by the provisions of the contract therefor, which plaintiffs introduced as a part of their case, to be made wholly within the alley, which they alleged to be a public highway of the city; such is a perfectly lawful use to make of the alley.   The mere fact that the wall cracked and fell out into the alley was not sufficient in itself to entitle plaintiffs to recover.   Shultz v. Beyers (N. J. L.), 13 L. R. A. 571.   There is no negligence in connection with plans adopted by the city, nor in requiring the improvement to be constructed in accordance therewith, when the work required can be done by a reasonably careful person using such precaution as the law enjoins in the doing of the work; that is, if the work contemplated would not, when properly done, necessarily cause injury to third parties, no right of action accrues on account of the plans alone. Independence v. Slack, 134 Mo. 76; Dillon v. Hunt,

82 Mo. 155; Uppington v. New York, 53 L. R. A. 550. The plan for the work which was to be done by the contractor required no unlawful thing. There is, as matter of law, no negligence in a plan (as distinct from the manner of doing the work) merely when the plan requires an excavation wholly within a public alley adjacent to plaintiffs' property, to be carried to a lower level than the foundation of the building; for the law authorizes this to be done. Charless v. Rankin, 22 Mo. 566; Larson v. Railroad, 110 Mo. 234; Obert v. Dunn, 140 Mo. 476; Walters v. Hamilton, 75 Mo. App. 237; Eads v. Gains, 58 Mo. App. 586; Handlan v. McManus, 42 Mo. App. 551; Busby v. Holthaus, 46 Mo. 161; Trans. Co. v. Chicago, 99 U. S. 635; Mining Co. v. Mining Co., 50 Mo. App. 525; Ward v. Andrews, 3 Mo. App. 275.   (3) The Heman Construction Company was an independent contractor, and neither it nor its employees were servants of the city, and therefore for injuries occasioned third parties by the acts of the contractor or its employees the city is not liable. Charter of St. Louis, art. 6, secs. 15, 27; Barry v. St. Louis, 17 Mo. 121; Blumb v. Kansas City, 84 Mo. 112; Crenshaw v. Ullman, 113 Mo. 633; Independence v. Slack, 134 Mo. 66; Long v. Moore, 107 Mo. 334; Hilsdorg v. St. Louis, 45 Mo. 98; McKinley v. Railroad, 40 Mo. App. 457; Sedalia Gaslight Co. v. Mercer, 48 Mo. App. 652; Casement v. Brown, 148 U. S. 615; Uppington v. New York, 165 N. Y. 222; Foster v. Chicago, 64 N. E. 322.   (4) The owner of a lot is entitled to lateral support for the soil in its natural condition only, and not to support for a building placed on it. Charless v. Rankin, 22 Mo. 566; Larson v. Railroad, 110 Mo. 234; Obert v. Dunn, 140 Mo. 476; Walters v. Hamilton, 75 Mo. App. 237; Gerst v. St. Louis, 185 Mo. 191; Trans. Co. v. Chicago, 99 U. S. 635.   (5) Where the adjoining owner has actual knowledge of the proposed excavation notice is dispensed

with. Gerst v. St. Louis, 185 Mo. 209; Larson v. Railroad, 110 Mo. 243; Charless v. Ranklin, 22 Mo. 573. And his failure to protect his own property amounts, of course, to contributory negligence.

H. A. *Loevy* for respondents.

The motion to set aside nonsuit was properly sustained. Although Heman may have been an independent contractor, yet the city was also liable because: (a) The work was attended by danger to respondents' house. 2 Dillon Mun. Corps., sec. 1029; Wiggins v. St. Louis, 135 Mo. 558; Crenshaw v. Ullman, 113 Mo. 636; Fink v. St. Louis, 71 Mo. 57; Broadwell v. Kansas City, 79 Mo. 216; Tegeler v. Kansas City, 95 Mo. App. 164; Jefferson v. Chapman, 127 Ill. 438; Ketcham v. Newman, 141 N. Y. 205; Eaton v. Co., 59 Me. 520; 26 Cyc. 1559. (b) The petition in terms alleges and there is ample proof that both defendants were negligent in the plan, method and manner of doing the work. Crenshaw v. Ullman, supra; Broadwell v. K. C., supra. (c) But Heman was not independent. The Heman contract in terms gave the street department and its officers absolute power over the contractor and its men. Larson v. Railroad, 110 Mo. 234; Scott v. Springfield, 81 Mo. App. 324. (d) The city's inspector expressly told and ordered Heman's foreman to dig under the wall of paintiffs' house so as to get a ten-foot alley which tortious act and trespass makes the city liable with Heman as a tort-feasor. Williamson v. Fischer, 50 Mo. 198; Ullman v. Railroad, 67 Mo. 118; Long v. Moon, 107 Mo. 334; Broadwell v. K. C., supra; Larson v. Railroad, supra; Crenshaw v. Ullman, supra; Wiese v. Remme, 140 Mo. 289; Nevins v. Peoria, 41 Ill. 502; Lacour v. N. Y., 3 Duer 456; 26 Cyc. 1558, 1565-6, 1566-7. (e) That plaintiffs did or did not shore up their house is absolutely immaterial upon question of setting aside nonsuit. The house rested on solid

ground and would not have tumbled down if the earth under the wall had been left intact and the wall had not been undermined. (f) A portion of the house stood within and south of the line of the alley, but that did not warrant the city's undermining it. To do so was, of course, a tort, and more than that: a violation of the Constitution, in that it took private property for public use without just compensation. Broadwell v. K. C., supra; Walters v. Hamilton, 75 Mo. App. 243; Tegeler v. K. C., supra.

GANTT, J.—This action was brought by the plaintiffs in the circuit court of the city of St. Louis, for damages to their residence, a story-and-a-half brick house, occasioned by an excavation in an alley adjacent thereto, made by the Heman Construction Company in grading for a brick pavement, under a contract with the Board of Public Improvements of the city.

The petition after certain formal allegations, and a description of the property of the plaintiffs, charges both the contractor, the Heman Construction Company, and the city with having "carelessly and negligently dug and excavated in said public alley along and south of the southern line thereof, and did said work so carelessly and negligently as to undermine and cause the sinking, breaking, crumbling and shattering of said house; . . . that defendants were negligent in the plan, method and manner of doing said work in this, to-wit, that the said excavation and digging was made just along and south of and under the north line of plaintiffs' said lot and north wall of their said house and fence, and was made and sunk to a distance so far south of and under the north line of the north foundation and brick walls of said building, and under the said fences, as to endanger the stability of said building and brick walls and fences, and make them part, break, etc., which the defendants

well knew or by the exercise of reasonable care could and would have known was likely to occur as the result of their said plan, method and manner of doing said work; that the defendants were further negligent in the conduct of said work in this, to-wit, that they failed to properly support the said northern wall of the said building and adjoining fences, and failed to notify plaintiffs of the commencement or progress of the work so that they could and should themselves support said wall and building and fence from and against the danger of falling or being otherwise injured, which the said defendant knew or by the exercise of ordinary care would have known, threatened said building and fences from and by the work in which they were engaged. Plaintiffs state that they had no notice, did not know and had no reason to believe at any time before the breaking and sinking of said walls or fences, or before said work was completed, that said defendants were making, or intended to make said excavations beyond or further south in said alley than the south line of said alley as the same was and is fixed and established by law.'' Plaintiffs alleged a damage to the building of $3,000; the subsequent shoring, thereof at $150; rental paid out for another house $20 per month; damage to household furniture, $300; expense of moving, $10, and prayed judgment for $4,500.

The city's answer consists first of a general denial, and, second, an allegation that the plaintiffs' building was in an insecure and unsafe condition; that the foundation thereof did not extend to a sufficient depth; that the foundation had not been constructed in a good and sufficient and workmanlike manner, and was not sufficient and strong enough to support the building constructed thereon; that the mortar contained in the wall and foundation was not suitable for the purpose for which it was used, nor of the proper kind and quality to make the said building secure,

and that if any injury happened to said building it was the result of inherent weakness therein, and of the improper and unworkmanlike manner in which it had been constructed; that the said building's foundation and walls were not reasonably and sufficiently strong to withstand the excavation of the said alley to its grade established by the ordinances; that the plaintiffs knew of the weakness and insufficiency and that this defendant did not know of the same; that the plaintiffs knew or by the exercise of ordinary care could have known of the establishment of the grade of said alley; that by ordinance 20703, approved June 20, 1902, the defendant city had provided for the grading, improving and paving of the said alley immediately alongside of the property of plaintiffs; that said alley was a public highway, which this defendant had a lawful right to cause to be graded, improved and paved; that under the provisions of said ordinance and the charter, the defendant awarded to defendant Heman Construction Company a contract for the grading, improving and paving of said alley; that thereafter the said contract was entered into on August 8, 1902, and approved by the council of the city on August 22, 1902, and thereafter was duly filed in the office of the register; that if any injury or damage occurred to the plaintiffs as complained of in the petition, the same occurred after the said work was begun, and after the plaintiffs knew the foregoing facts, and was the result of plaintiffs' negligence directly contributing thereto, in this, that plaintiffs failed to adopt any means to protect their property from the natural consequences of the doing of said work adjacent thereto; that at and prior to the doing of the said work by the said Heman Construction Company, the house of the plaintiffs was occupied by the plaintiffs and their agents and was in their own care, and that all of said persons well knew at and prior to the time of said

excavation when and where the same was to be made, and the extent thereof, or by the exercise of ordinary care plaintiffs could have learned of the same before any injury happened, and could have prevented the same. Defendant city denied that it dug and excavated in the alley, or had anything to do with the same; denied that it was negligent in the plan, method and manner of doing said work; denied that the defendant was negligent in the conduct of said work, but alleged that it did not in any manner conduct the said work, or have anything to do therewith, except by way of inspection of the same in order to insure a proper and suitable result; denied that it was negligent in failing to support the wall of plaintiffs' building, and alleged that it was not the duty of the defendant city to support plaintiffs' wall, but that it was the duty of the plaintiffs themselves to do so. Defendant city further alleged that the defendant Heman Construction Company in the doing and performing of its said work under the said contract was an independent contractor, and that the defendant city had no control over the conduct of the said work, or the details thereof, except by way of inspection as it progressed and with a view to insure a good and proper result thereby.

The reply to this answer was a denial of new matter.

On the part of the plaintiffs the evidence tended to establish that the alley, the paving of which, it is alleged, caused plaintiffs' house to fall, was a block long, extending westwardly from Coleman street to Bacon street. Plaintiffs' building was at the west end of the alley, and on the south side thereof, fronting westwardly on Bacon street. The contractor began its work at the end of the alley farthest from the plaintiffs' building, first plowing up the earth in order to loosen it, so that it could be hauled off. Ordinance 19980 was an ordinance to widen east-and-west alley in

city block 1886 from Coleman street to Bacon street and provided that said alley was thereby widened to a width of ten feet, the south line thereof to coincide with the present south line of said alley and the north line to run ten feet north of and parallel to the said south line, and the city counselor was directed to cause said alley to be widened according to law. This ordinance was approved March 20, 1900. The evidence established that the south line of the alley was not changed by the proceeding to widen the alley. Plaintiffs next offered in evidence ordinance 20773, which established the grade of said alley between Coleman and Bacon streets. Plaintiffs then offered in evidence contract number 6257 between the city of St. Louis and Heman Construction Company, as principal, and the United States Fidelity and Guaranty Company, as surety, for the paving with brick of the said alley, which was dated August 8, 1902. Under and by virtue of ordinance 19980 the city prosecuted its proceeding for the widening of the said alley to ten feet, by which proceeding one foot was condemned of the lots on the north side of the said alley and added thereto. The plat showing a widening of the alley was offered and exhibited in evidence. This widening of the alley had occurred about two years before the work was done, and by its contract with the city the Heman Construction Company undertook to lay a ten-foot improvement in the ten-foot alley thus established.

There was nothing in the contract which required the contractor to go outside of the ten feet, which at that time had become throughout its entire width of ten feet a public highway. The evidence established, moreover, that before any work was done in the alley, an engineer had gone through and indicated by marks on fences, sheds and other buildings the depth to which the alley must be excavated in order

to bring it to the grade established by ordinance. The only representative of the city who appears to have been present at any time, when the grading complained of was being done, was an inspector, Henry Ittel, who was a street inspector, and his duty was simply to see that the contractor's men carried the excavation to the required depth and performed the work otherwise according to the contract, but he gave no orders.

It is true that Mr. McGrath testified that on the morning before the wall fell, he overheard a conversation between Mr. Heman and Mr. Ittel, in which they discussed the width of the alley, and Heman said to Ittel: "They did not get it wide enough. I got to get that other foot from somewhere," and Ittel pointing with his hand, said: "Go right in there and get it." "I was sitting in the window looking at them, they were just the width of the wall from me." In other words this witness testified that Ittel, the inspector, directed Heman, the contractor, to extend the alley a foot south of the south line and thus go under the north wall of plaintiffs' house. Ittel positively denies this statement and says he gave no orders whatever to the contractor to go outside of the line of the alley which had already been established. That the sole authority that he had in the premises was to inspect and see that Heman performed the contract according to its terms.

The evidence shows that the Construction Company began its work at the end of the alley furthest from the plaintiffs' building. Both of the plaintiffs and their grown son, all of whom lived at and in the building, which was wrecked, testified that they saw the work progressing from the east end of the alley for from two to three weeks prior to the day when the damage was done, and knew that there would be some excavation along the north side of their building. They spoke to the contractor's foreman about the mat-

ter, and two days before the injury wanted to know
of him who would be responsible in case of damage to
their house. This foreman referred them to the street
commissioner of the city. Back of the house and along
the line of the alley, the plaintiffs had a shed and a
fence; the excavation in.the alley caused these struct-
ures to fall in, nearly a week before the injury to the
house. Plaintiffs admitted that they knew of all of
these facts, and that they watched the progress of the
work towards the house, but did nothing to protect it
nor to ascertain whether it would be in any danger
from the excavation. The deepest excavation made
along the house was two feet seven inches. The house
was a two-story brick house, or at least a story-and-a-
half, and the foundation along the alley was a foot and
seven inches in depth beneath the surface of the
ground, that is to say, in order to excavate to a depth of
two feet seven inches to bring the surface of the alley
to the grade established by ordinance, the excavation
was carried about twelve inches below the level of the
bottom of the foundation. Several of the plaintiffs'
witnesses testified that the contractor did not confine
himself to the lines of the alley, but excavated beyond
the alley on the south and underneath the wall of the
plaintiffs' building to the extent of from four to six in-
ches. Some of the testimony of the plaintiffs was to
the effect that what appeared after the wall had fallen
in to be an excavation made underneath the bottom of
the foundation, might have been caused by the earth
which had been left under the foundation slipping
outwardly when the lateral support had been taken
away.

At the end of plaintiffs' case, both defendants
interposed demurrers and asked peremptory instruc-
tions. The city's instruction or demurrer to the evi-
dence was sustained, while that of the contractor was
refused. The trial then progressed and at the end of

the whole case, the jury rendered a verdict against the Construction Company for $1,620. Whereupon the plaintiffs filed a motion to set aside the nonsuit as to the defendant city and for a new trial on the ground, first, that the court erred by admitting improper evidence offered by the city; second, the court erred in rejecting evidence offered by the plaintiffs affecting the city; third, the court erred in sustaining the city's demurrer to the evidence. The Construction Company filed a motion for a new trial, which was sustained by the court because of error in instructions given to the jury, and the court sustained the motion of the plaintiffs for a new trial as against the defendant city, without stating any grounds upon which said order was based. This appeal is taken by the city alone from the order sustaining the plaintiff's motion to set aside the order sustaining the demurrer to the evidence and granting a new trial.

This appeal involves the question of the city's liability under the evidence for the damage which occurred to plaintiffs' house by reason of the excavation in the said alley under the contract between the city and the Heman Construction Company. The propriety of the court's action in setting aside the nonsuit as to the defendant city and awarding a new trial presents the only question for consideration. In order to determine whether this was error or not, it is essential that we recur to the petition of the plaintiffs. They sue for damages to their building and their assignments of negligence are three. First, that the defendants, both the city and its contractor, trespassed on their land by digging beyond the alley line and going beneath their wall. Second, that the defendants were negligent in the plan, method and manner of doing the work, in that they trespassed upon the land of the plaintiffs and carried the excavation south of the alley line and under the plaintiffs' wall. Third, that the defendants

were negligent in the conduct of the work in failing to support the building and in failing to notify the plaintiffs of the commencement and progress of that work so that they themselves could support the building. Of these in their order.

I.  The ground upon which the plaintiffs seek to hold the city liable under the first assignment of negligence is that the city was a joint tortfeasor with the contractor, and this is based upon the claim that the contract itself necessarily required the trespassing for one foot upon the plaintiffs' land, but if the contract itself did not require this in terms, or by implication, that the city's inspector required it of the contractor and therefore the city was liable. Counsel for plaintiffs concedes that the city and the contractor had the right to dig up to the south line of the alley, but had no authority to go a fraction of an inch beyond the south of that line. Counsel for the plaintiffs argues that while the ordinance called for the improvement of a ten-foot alley and the plan followed the ordinance, the facts were that it was a ten-foot alley only on paper and nine-foot on the ground, and insist that when the contractor came to do the work and discovered that the alley was actually only nine feet wide, instead of stopping the work and ejecting the owners on the north side of the alley from the necesary foot on the north line, the contractor and the inspector deliberately decided to take it off of the south side of the alley and dug under plaintiffs' wall. However plausible this theory may be, we think it is wholly unsupported by the facts in the record. In the year 1900, by ordinance 19980, approved March 20th of that year, and under the court proceedings which followed, the defendant city widened the alley in question from nine to ten feet, and the plat showing this widening of the alley was in evidence. Thus the extra foot was added on the north side of the alley. The contract under which

the work was done was not executed until August 8, 1902. And the plat of the street department shows that the alley in question at that time was actually ten feet wide. There is no evidence in the record to contradict this fact, so that this predicate of the city's liability is without foundation in the evidence. And there is no support for the contention that the contract which the city made with the Heman Construction Company required the trespassing for one foot upon the plaintiffs' lot. The contract required the work of constructing this alley to be done "in conformity with the plans of such work on file."

Mr. Travilla, a witness for the plaintiffs, testified that he had been employed in the office of the street commissioner for nine years and was familiar with the plats, records and the surveys thereof; he produced the official improvement plat of city block 1886, used in connection with the contract of the Heman Construction Company for the improvement of the alley in said block, and it showed that the alley was ten feet wide when the ordinance was passed for the improvement of the alley. The plaintiffs offered this evidence and it thus appearing that the alley was ten feet wide at the time of the letting of the contract and the contract requiring the work to be done in accordance with that plat, it cannot be successfully contended that the contract itself required a trespass upon plaintiffs' land. There was nothing in the contract which required the contractor to go outside of the ten feet, which at that time had become throughout its entire width of ten feet a public highway. Whatever the contractor may have done outside of the limits of the alley so far as the face of the contract and the plat show, the city was not responsible therefor, so that we think the plaintiffs have failed to bring their case within the exception of the general rule, to-wit, that the work required of the contractor necessarily

involved the commission of a trespass upon plaintiffs' lot.

Can the liability of the city be sustained upon the other ground, to-wit, that the witness Ittel, who was employed by the city as an inspector merely to see that the Construction Company performed the work according to the contract, directed the Construction Company to go under plaintiffs' building in order to get the ten feet for the pavement? This witness was called by the plaintiffs and he testified that he had been a street inspector for ten years. He was placed on this work to see that the alley was put in proper shape by the contractor according to the specifications. He testified that the work for the Heman Construction Company was under the charge of Mr. Siegel. He testified further that he had nothing to say about the work except to see that the work was done according to the specifications, that is, in the right shape. The marks and stakes had already been made and established by the engineer, who had been over the ground before the work began, to indicate the depth at which the grading should go in order to obtain a uniform shape for the completed pavement. He denied positively having the conversation with Mr. Heman, which Mr. McGrath had testified to respecting the excavation beneath the wall. While the plaintiffs are bound by the testimony of their own witness, the physical facts would seem to corroborate him. The width of the alley was already ten feet as shown by the ordinance and the condemnation proceedings and the plats also offered by the plaintiffs. It was entirely unnecessary for him to make such a statement as was attributed to him by Mr. McGrath. This witness's duty was solely to see that the work was done as required by the contract and the engineer's marks and stakes, and he testified that he had no occasion to direct the foreman respecting the doing of the work. It would seem

too plain for argument that this subordinate officer of the city had no authority to change the terms of the contract. When the ordinance was passed authorizing the improvement of the alley the municipal assembly did not authorize, and could not authorize, any employee of the city to go upon private property and the record shows that it did not attempt to confer any such authority. It approved the contract for the laying of an improvement in an alley. The head of the street department gave no such orders to Ittel, and the engineer, who marked off the grades, which had been previously established · by ordinance, gave no such orders, and if the contractor was capricious enough to commit the alleged trespass, we think it is plain the city cannot be bound thereby. Even if we assume the truth of Mr. McGrath's testimony we do not see how it can bind the city, for according to the plaintiffs' own testimony, the inspector had no authority by oral directions contrary to the provisions of the written contract to lead the contractor away from the work, which had been formally let and contracted for, to the commission of a trespass upon plaintiffs' property. In short we think the plaintiffs utterly failed to show any authority in Ittel to vary this contract and he denies that he had any such and denies that he ever attempted to exercise such functions and denies the testimony of McGrath. To hold that these municipal contracts, which are so carefully provided for in the charter, can be changed by any officer or subordinate would destroy the principle of competitive bidding, which is a prime feature of the charter.

II. The plaintiffs' second charge of negligence is that the defendants were negligent in the plan, method and manner of doing the work, in that the excavation was made along and under the north part of plaintiffs' lot and wall so far south of the north line and so far underneath the wall as to shatter the building.

In other words, that the work was intrinsically dangerous however skillfully performed, and that, therefore, the city was liable, even though the work was being done by an independent contractor under special contract. Numerous authorities are cited by counsel for plaintiffs to sustain this assignment of negligence. This contention like the last one discussed is bottomed upon the assumption that while the ordinance and contract called for grading and paving a ten-foot alley, the physical fact was that the alley was only nine feet wide. Crenshaw v. Ullman, 113 Mo. 633, is cited in support of this proposition. But in that case it was said by this court that "if the defendant did, by his servants, agents and employees and against the complaint of plaintiffs, enter upon and dig a hole and excavate and remove from said strip of ground dirt and stone by which plaintiffs were injured, then defendant is liable therefor, and it makes no difference whether the person committing the injury, or having it done, is an independent contractor or not, provided the injury was committed by defendant's direction, or by and with his knowledge and consent, and for his use and benefit." But in the same case, it was said: "If he, Snavely, was an independent contractor then the defendant is not liable, but if the agent of defendant, and the work was done in an unskillful or negligent manner, then the defendant is liable." The rule as to the liability of independent contractors announced by Judge Thompson in his work on Negligence, vol. 2, sec. 22, page 899, was approved. In that case it was said further: "The contractor must answer for his own wrongs and the wrongs committed in the course of the work by his servants. . . . And it makes no difference that the defendant had an agent employed to superintend the work and to see that the contract was complied with." But it is unnecessary to review all the authorities cited by learned

counsel for the plaintiffs upon this point, because in our opinion, there was no negligence in the plan adopted by the city. The excavation of this alley for the pavement was by contract, which the plaintiffs introduced as a part of their case, to be made wholly within the alley which was a public highway of the city, and it was a perfectly lawful use to make of the alley. The mere fact that the wall cracked and fell out in the alley was not sufficient in itself to entitle plaintiffs to recover. [Schultz v. Byers (N. J. L.), 13 L. R. A. 569, 571.] There was no negligence in the plans adopted by the city, nor in requiring the improvement to be constructed in accordance therewith. When the work required can be done by a reasonably careful person using such precaution as the law enjoins in the doing of the work, that is to say, if the work contemplated would not when properly done necessarily cause injury to third persons, no right of action accrues on account of the plans alone.

In Dillon v. Hunt, 82 Mo. 155, the distinction is drawn between work which in the ordinary mode of doing it is a nuisance or necessarily dangerous, and work which is not in itself necessarily a nuisance and the injury results in the negligence of an independent contractor or his servants in the execution of it. In the latter case, the contractor alone is liable unless the owner is in default in employing an unskillful or improper person as contractor. [See, also, Independence v. Slack, 134 Mo. 66, l. c. 76.] In the latter case it was said: "The evidence leaves no doubt whatever that under the terms of the contract with Stewart for providing the materials and constructing the sidewalk he was an independent contractor. The contract called for a completed sidewalk, the construction of which was lawful in itself and did not necessarily involve the commission of a public nuisance, or danger

to other persons, if carefully done. No directions were given or control retained by defendant in respect to the means to be used or the methods to be adopted in accomplishing the result." So in this case, the plan for the work required no unlawful thing to be done by the contractor, as a matter of law there is no negligence in a plan merely that requires an excavation wholly within a public alley adjacent to plaintiffs' property to be carried to a lower level than the foundation of the building. [Charless v. Rankin, 22 Mo. 566; Obert v. Dunn, 140 Mo. 476.]

But the plaintiffs insist that the Heman Construction Company, which did the grading and which their proofs show did the undermining of their wall, if any one did, was *not* an independent contractor, but was a servant of the city, and that, therefore, the rule which exempts it from the acts of negligence of an independent contractor is not available. "The general rule is that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work, not in itself unlawful or attended with danger to others, according to the contractor's own methods and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his subcontractor or his servants, committed in the prosecution of such work. An independent contractor . . . is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. The contractor must answer for his own wrongs and the wrongs committed in the course of the work by his servants." [Crenshaw v. Ullman, 113 Mo. l. c. 639, and cases cited.]

While plaintiffs contend that certain provisions of the contract under the head of "general stipulations," to-wit, that the contractor shall "conform to the street

commissioner's directions as to the order of time in which different parts of the work shall be done as well as to all his other instructions as to the mode of doing the same,'' and empowers the street commissioner, in the absence of the contractor, to give orders to the superintendent in charge for the contractor and if the employees of the latter refuse or neglect to obey the instructions of the street commissioner or appear disorderly and incompetent, they shall be discharged, and give the street commissioner power to condemn work and require it to be reconstructed, take this case out of the rule as to independent contractors, we do not think these stipulations do. These stipulations must be read in connection with the other provisions of the contract, and when so read, it is evident that their purpose was merely to secure, by way of proper supervision and inspection, a compliance with the contract, and in no sense released the contractor from his obligations to perform the contract as such and not as an agent. It has been expressly ruled, under similar contracts, that a power to superintend the work and see that the contract was complied with did not make the contractor an agent or deprive him of his character of independent contractor. [Crenshaw v. Ullman, 113 Mo. 633.] Likewise, in Blumb v. Kansas City, 84 Mo. 112, a provision in the contract with the city which reserved the right to annul the contract or suspend the work whenever in the judgment of the engineer there was good reason for doing so, and required the contractor to discharge any workman who should disobey any direction of the city engineer as to workmanship or material used, did not make the city liable. This whole contract read as one document clearly establishes that the Heman Construction Company was an independent contractor in the meaning of the law on this subject, and the charter provisions of St. Louis. [Sec. 27, art. 6, St. Louis Charter.]

The various cases cited by plaintiffs have all been carefully considered and they can readily be distinguished from the facts of this or are clearly in harmony with the views here expressed.

III.   It remains only to notice the third allegation of negligence, to-wit, that the defendants were negligent in failing to support the building and in failing to notify plaintiffs of the commencement and progress of the work so that they themselves could support the building.   Conceding, for argument only, that this duty devolved upon the city and that it was incumbent on the city as well as the contractor to give this notice, it is evident that the plaintiffs' own testimony is a complete answer to this contention.   The plaintiffs lived in this house and knew of the excavation two weeks before the work reached their end of the alley; knew the work would occupy the whole ten feet width of the alley; knew their house abutted immediately upon the south line of the alley and that their house was above the established grade fixed by the engineer and they had actual notice of the work and that it would require excavation right up to their wall, and yet they took no steps to shore up or protect their wall, whereas the city had no knowledge of the depth of the plaintiffs' foundation.   This knowledge dispensed with any formal notice by the city.   [Gerst v. St. Louis, 185 Mo. 191; Larson v. Railroad, 110 Mo. 243, 251, 252; Charless v. Rankin, 22 Mo. l. c. 573.] So far as the city was concerned it provided a plan, which did not necessarily require any danger to plaintiffs' house if carried out in a reasonable manner.   The giving of the notice would have devolved upon the contractor, but the plaintiffs' own evidence removed the foundation of this assignment, as they disclose they had actual notice long enough to have protected their building.   The plan in no sense called for a trespass or the commission of a nuisance but was a provision

for a lawful and proper improvement of an established highway. [Trans. Co. v. Chicago, 99 U. S. 640.]

After a consideration of the plaintiffs' petition and all the evidence in support of it, we think the court properly directed the jury the city was not liable, and erred in granting a new trial as to the city, the only appellant here. The judgment must be and is reversed with directions to the circuit court to set aside its order granting plaintiffs a new trial as to the defendant city of St. Louis and render judgment for the city.

*Fox, P. J.,* and *Burgess, J.,* concur.