COLE v. CITY OF ST. LOUIS, *Appellant.*

Division Two, March 3, 1896.

1. **Municipal Corporation:** STREET: CHANGE OF GRADE: DAMAGES, MEASURE OF. Damages to abutting property from change of street grade should be estimated by deducting from the damages sustained the direct and peculiar benefits resulting to the tract in question, and not the general benefit that such tract would derive in common with the lands of other owners in the neighborhood.

2. ———: ———: ———: DAMAGES: BENEFITS. Where abutting property is damaged by change of street grade and afterward it and all other property on the street increase in value from other reasons than the change of grade, until the value of the property in question is equal to what it was before the change, the latter fact will not preclude the owner from recovering damages.

3. ———: ———: ———: ———. A city is, under section 21 of article 2 of the constitution of 1875, liable for damages resulting to abutting property owners from a material change in the grade of a street from the natural surface.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*W. C. Marshall* for appellant.

(1) On the pleadings and evidence plaintiff is not entitled to any damages. From whatever standpoint of fact the case may be viewed, the evidence is uncontradicted that plaintiff's property was worth from $3,000 to $8,000 more after the change of grade than it was before the street was graded and improved. (2) Under the law plaintiff is not entitled to any damages. This case strikingly illustrates how values increase as public improvement advances. The value of property enhances in the proportion to its accessibility by easily traveled streets. Section 21 of article 2 of the constitution of this state, never was intended to retard the development of large cities by making such cities liable in damages for a change of grade from the original surface of the street. See *Davis v. Railroad*, 119 Mo. 168.

*Leverett Bell* for respondent.

(1) A city is liable for damages to property arising by reason of a material change in the grade of a

street from the natural surface of the ground. *Davis v. Railroad*, 119 Mo. 180; *Hickman v. Kansas City*, 120 Mo. 110; *Smith v. St. Joseph*, 122 Mo. 643; *Markowitz v. Kansas City*, 125 Mo. 485; *Smith v. Kansas City*, 30 S. W. Rep. 314. (2) Where no instructions or declarations of law are asked or given in cases triable by a jury, the findings and judgment of the trial court upon the evidence will not be reviewed. *Clark v. Transfer Co.*, 30 S. W. Rep. 121; *Bank v. Flanagan*, 31 S. W. Rep. 773, at pp. 777, 778. (3) If however the matter were examinable here, the judgment is amply sustained by the evidence; and in considering the compensation to be awarded plaintiff, general benefits shared in common with other property in the neighborhood, are not to be deducted. *Hickman v. Kansas City*, 120 Mo. 110, *Spencer v. Railroad*, 120 Mo. 160. (4) The rule as to the measure of damages in cases of this character is the difference in the market value of the property before and after the grade is changed. *Sheehy v. Railroad*, 94 Mo. 580; *Slattery v. St. Louis*, 120 Mo. 183; *Smith v. Kansas City*, 30 S. W. Rep. 314; *Stevenson v. Railroad*, 31 S. W. Rep. 793; *Heinrich v. St. Louis*, 125 Mo. 424.

GANTT, P. J.—This is an action for damages caused to plaintiff's residence property on Westminster Place in the city of St. Louis by reason of a grade established by an ordinance of said city, whereby the grade of the street on which said property abutted was lowered about eight feet, requiring the expenditure of a large sum of money to adjust said property to the new grade and resulting in the destruction of many valuable shade trees, wells, and other improvements on said property. The damages were laid at $15,000. The answer of the city is a general denial. A jury was waived and the cause was tried to the court which ren-

dered judgment for plaintiff and assessed his damages at $8,500.    The city appeals.

Mr. C. R. Hopkins, a witness for plaintiff, testified that he had lived in the city twenty-six years and had known plaintiff's premises for twelve years and before and after the change of grade, and that prior to the time it was lowered, the street was at the natural surface of the earth, and the buildings and improvements of plaintiff were erected in conformity thereto. The witness identified certain photographs numbered from 1 to 8 inclusive, as correct views of the property, and the same were introduced in evidence.  By stipulation of counsel, these photographs were used at the hearing in this court.  The witness stated that he was acquainted with the value of property on Westminster Place and lived in the vicinity of plaintiff, and that said property, taking its value before and after the change of grade, was damaged $7,000 or $8,000 by the change of grade.  On cross-examination, witness stated that about the time this change in the grade was effected, and soon thereafter, the property in that neighborhood was rapidly appreciating so that notwithstanding the dismantling of plaintiff's property it, along with all other property in that vicinity, was greatly enhanced in value by the general advance, but he did not attribute this to the street improvements to any perceptible extent; that notwithstanding the rise plaintiff was damaged because his property would have been increased in value without the corresponding expense of adjusting it to the grade, and without the loss of his trees.

The plaintiff was examined as a witness for himself and testified that he purchased the property in question in September, 1873, from Mr. Garrison and wife, and commenced living on the property at that time and has lived there ever since except during the

interruption caused by the change of grade. The property, when plaintiff commenced to live there, fronted three hundred feet on a street called Lindell Place, which was dedicated in 1867, and the grade of the street was at the natural surface of the ground. The first floor of the house was about four feet above the lawn. There was a porch eight feet wide in front of the house and six steps leading up to it. The house was fifty feet long at the front and forty-two feet deep to the rear with an ell twenty-two by eighteen feet. There was a stable and carriage house, three cisterns, a horse lot and cow shed and trees, shrubbery and vines on the premises, also a playhouse for children, and walks and drives and about twenty-eight trees. The plaintiff continued to live there until 1890 and 1891, the condition of the place remaining the same, when the street in front of the house was graded down by the city about eight feet, and the alley in the rear was graded down about seven feet. The plaintiff put up a flight of steps to the bank in front of the house and continued to live there until July, 1892, since which time he has been reconstructing it and conforming the premises to the new grade and grading down the lot, on which work he had expended $5,926.52 with a further outlay in sight to complete the work. Twenty-two shade trees were destroyed, the value of which was $800. Before the grade was changed the property was worth $31,000; afterward, $19,000.

The alley in the rear of the property was acquired by condemnation proceedings, and plaintiff received $375 compensation; all the improvements on the place in 1890 were there prior to 1883. That the first floor of the house is now thirteen feet above the sidewalk. That the line of the front porch is eighteen feet from the sidewalk, in which distance a rise of thirteen feet is made by twenty steps. That the house was built in

1868, and its original value was $20,000, and the value of the other improvements on the lot was $3,000. On cross-examination witness testified property advanced rapidly all over that section soon after the street was graded. His damages consisted principally in the damage to his improvements and the cost of adjustment.

Dr. Geo. W. Weyer testified: That he lived just opposite plaintiff's property and had lived there about seven years, owning his own; that he had a general idea of the difference in value of plaintiff's property immediately before the street was cut down, and immediately afterward; that it was worth $7,000 or $8,000 less afterward than it was before the change of grade.

Cross-examined, witness said: That in his opinion the damage was to the property as well as to the improvements; that in his opinion if the grade had been the same as the natural surface of the land it would have increased the value of the property, but he could not tell how much; that fixing a grade and making a street would benefit property where the grade was not too great.

For the defendant, Wm. Popp, an employee of the street department, testified that at the request of plaintiff he raised the grade of the alley two inches at the west end of the stable, and lowered it in the same manner at the east end of the stable, so as to make it level along the stable.

Mr. John O'Malley, a witness for defendant, said that he was one of the commissioners in the proceedings to open the alley in the rear of the premises, and that no damages were allowed plaintiff for the grade of the alley, but only for the value of the ground and improvements taken.

Messrs. Joseph J. Phillips, J. W. Donnell, and C. E. Udell, property owners of Westminster Place, were examined for defendant as to what they and others paid for property on that street and testified they paid for $85 to $120 a front foot but gave no opinion as to the injury to the property in controversy. The remaining witness for defendant was Mr. Charles Varrelman, superintendent of its streets, and he stated that the plaintiff was satisfied with the grade of the alley as established by ordinance 16,332.

Plaintiff in rebuttal positively denied the statements of Popp and Varrelman. No instructions were asked or given.

I. It is insisted by the learned city counsellor that on the pleadings and the evidence plaintiff is not entitled to recover. He reached this conclusion from the fact that soon after the grade was established and the cut made in front of plaintiff's residence, this property along with all other property on that street, and in that neighborhood, greatly increased in value. The learned counsel, however, overlooks the fact that the evidence all tended to show that this enhancement was due to the increase of all the property in that neighborhood and no special benefit accrued to plaintiff's lot by reason of the improvement of the street. On the contrary the evidence was that the property would have increased in value as rapidly had there been no grading and consequently no injury to his lot.

In other words it is assumed by counsel that notwithstanding a specific piece of property is greatly damaged and the owner put to a large expense to readjust his improvements to a new grade, yet if his property, along with all the other property on that street, increases in value from other reasons until it becomes worth as much after the grading as it was before, then the owner can not recover any damages. The law of

this state has been settled otherwise for many years. It has been ruled from the beginning that the benefits to be deducted from the damages sustained by the landowner by the taking or damaging his property is only the direct and peculiar benefit that would result in particular to his tract and not the general benefit that his lands would derive in common with the lands of other owners in his neighborhood. It has been conceded all along that a different rule maintained with great force and reasoning obtained in other jurisdictions, but the rule first adopted in this state has been steadily adhered to and must now be considered as settled especially since the whole question was reexamined and unanimously decided by the court *in banc* as recently as *Hickman v. Kansas City*, 120 Mo. 110, and *Spencer v. Railroad*, 120 Mo. 154.

There was ample evidence to sustain the finding unless we are to charge plaintiff with the increase in the value of his property from other causes, disconnected with the grading, and this can not be done.

II. But it is urged that a large city like St. Louis is not liable to abutting property owners for a change of grade for the first time from the natural surface. This question has also received the careful consideration of this court in both divisions and *in banc* and the conclusion reached that a city without reference to its size or population is liable for damages resulting to abutting property owners from a material change in the grade of a street from the natural surface under section 21, article 2, of the constitution of 1875. *Davis v. Railroad*, 119 Mo. 180; *Smith v. St. Joseph*, 122 Mo. 643; *Hickman v. Kansas City*, 120 Mo. 110; *Markowitz v. Kansas City*, 125 Mo. 485.

III. As no instructions were given or refused and there was evidence upon which the court could have

based its finding or judgment, that verdict can not be disturbed in this court. The judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.