### JOHNSON v. CITY OF ST. LOUIS.

(Circuit Court of Appeals, Eighth Circuit. July 6, 1909.)

No. 2,863.

1. EMINENT DOMAIN (§ 112*) —DAMAGE TO ADJOINING BUILDING FROM LAYING SEWER NOT RECOVERABLE UNDER MISSOURI CONSTITUTION.

The damage to a four-story brick building and its contents by the laying by the city of St. Louis of a sewer in an adjoining alley below the plane of the foundation of the building, after the owner knew in time to prop and protect his building that the sewer was to be laid, and that there was danger that it would cause his building to crack and settle, whereby the lot in its natural state would not have been caused to settle or crumble, but whereby the building was cracked, and it and its contents were injured to the amount of tens of thousands of dollars, is, according to the decisions of the Supreme Court of Missouri, damnum absque injuria, and the owner is not entitled to any compensation therefor under the amended Constitution of that state (article 2, § 21 [Ann. St. 1906, p. 148]), which provides that private property shall not be taken or damaged for public use without just compensation.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 112.*]

2. ADJOINING LANDOWNERS (§ 4*)—LATERAL SUPPORT—REMOVAL NOT ACTIONABLE IF LOT IN NATURAL STATE WOULD NOT SETTLE.

A private party is liable for damages caused to an adjoining lot by his removal of lateral support to such an extent that the lot in its natural state would settle or crumble, but for nothing more.

If his removal of lateral support would not have caused the adjoining lot to settle or crumble in its natural state, he is not liable for damages which result because the superincumbent weight of buildings or other ponderous things contribute to the settlement of the lot.

[Ed. Note.—For other cases, see Adjoining Landowners, Cent. Dig. §§ 21-37; Dec. Dig. § 4.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. COURTS (§ 366*)—CONSTRUCTION OF STATE CONSTITUTIONS AND STATUTES—NATIONAL COURTS FOLLOW DECISIONS OF STATE COURTS.

In the construction of the Constitution and statutes of a state, the national courts uniformly follow the interpretation announced by the highest judicial tribunal of the state, where no question of general or commercial law or of right under the Constitution of the United States or the acts of Congress is involved.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 956, 957; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

4. COURTS (§ 366*)—MUNICIPAL CORPORATIONS—POWERS AND LIABILITIES MEASURED BY STATE DECISIONS.

The character and extent of the powers and liabilities of the political or municipal corporations of a state are questions of construction of state Constitutions and statutes, upon which the decisions of the highest judicial tribunal of the state which creates them are generally controlling in the national courts, and when that court has decided one of these questions the decisions of the courts of other states and of the federal courts in the construction of the Constitutions or statutes of other states are immaterial.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 963; Dec. Dig. § 366.*]

5. COURTS (§ 311*)—FEDERAL COURTS—JURISDICTION—CITIZENSHIP OF TRUSTEE MATERIAL, THAT OF CESTUI QUE TRUST IMMATERIAL.

A citizen of one state, who holds the title to property in trust for others, may maintain an action for damage to it against a citizen of another state in the proper federal court, without regard to the citizenship of his cestui que trust.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 858; Dec. Dig. § 311.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

6. COURTS (§ 363*)—PRESIDENT OF JOINT-STOCK COMPANY AUTHORIZED BY STATE STATUTE HAS CAPACITY TO SUE IN FEDERAL COURT.

The president of a joint-stock company, the American News Company, empowered by the statute of New York, under which it was organized, to sue in its behalf, may maintain an action for injury to its property in a national court in the state of Missouri.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 363.*

Jurisdiction as affected by state laws, see note to Barling v. Bank of British North America, 1 C. C. A. 513.]

7. COURTS (§ 363*)—FEDERAL COURTS—JURISDICTION—PROHIBITION OF SUITS IN STATE COURTS DOES NOT AFFECT SUITS IN FEDERAL COURTS.

The Missouri statutes, which forbid unqualified foreign corporations doing business in that state from maintaining suits in the courts of the state, do not affect their right to maintain suits in the national courts, because the jurisdiction of the latter may not be revoked, annulled, or impaired by any act or law of a state.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 363.*]

8. COURTS (§ 363*)—FOREIGN CORPORATION ACTS—FAILURE TO COMPLY WITH DOES NOT DESTROY LIABILITY FOR INJURY TO PROPERTY.

The failure of a foreign corporation doing business in a state to comply with qualifying statutes does not deprive it of the liability of one who injures or destroys property which it owns to pay for the legal injury

he inflicts, nor of its right to maintain an action upon that liability in the federal courts.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 363.*]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

See, also, 137 Fed. 439.

T. K. Skinker, for plaintiff in error.

Benjamin H. Charles and A. H. Roudebush, for defendant in error.

Before SANBORN, Circuit Judge, and CARLAND, District Judge.

SANBORN, Circuit Judge. Prior to 1875, the Constitution of the state of Missouri contained this provision:

"That no private property ought to be taken or applied to public use without just compensation." Section 16, art. 1, Const. 1865.

In that year this Constitution was so amended that it has since read in this way:

"That private property shall not be taken or damaged for public use without just compensation." Section 21, art. 2 (Ann. St. 1906, p. 148).

In 1903 the city of St. Louis caused a sewer to be laid in an alley by the side of the plaintiff's four-story brick building in a plane several feet below that of the foundation of this structure. The excavation for and the construction of this sewer did not encroach upon plaintiff's lot, and, if the lot had been in its natural condition, they would not have caused it to crumble or settle; but they so diminished the lateral support of the lot that it did not sustain the weight of the building, and in this way the laying of the sewer caused the walls of the building to crack, compelled the plaintiff to rebuild portions of them, and caused damage to the amount of tens of thousands of dollars to the building and its contents.

Notwithstanding the large amount of this damage, no recovery could have been had for it if the alley had been owned and the sewer had been built therein by a private party, because the plaintiff knew that it was to be constructed and was aware of the danger from it in ample time to have propped and protected his walls, and damage caused by the removal of support to a lot which would not have caused it to settle and crumble in its natural state form a part of that great mass of damages which inflict no legal injury and are commonly styled damna absque injuria. Transportation Company v. Chicago, 99 U. S. 635, 645, 25 L. Ed. 336; Charless v. Rankin, 22 Mo. 566, 571, 66 Am. Dec. 642; Gilmore v. Driscoll, 122 Mass. 199, 23 Am. Rep. 312; McGrath v. City of St. Louis, 215 Mo. 191, 114 S. W. 611, 618.

But counsel for the plaintiff contends that, by virtue of the amendment of the Constitution in 1875, the injury to the building and to its contents was made a legal injury and an actionable damage which the plaintiff was entitled to recover thereunder. The court below was of a different opinion and instructed the jury to return a verdict for the city.

The plaintiff's counsel concedes that the damage for which he seeks judgment was not the effect of the negligence of the contractor, and that the city had the right to lay the sewer because the construction and operation of sewers constituted one of the public uses to which the alley was subject by virtue of its original dedication to or acquisition for public use.

It is immaterial whether the title to the land adjoining the plaintiff's lot to the middle line of the alley was in the plaintiff or in the city, because in either case it was subject to the right of the city to use it for sewers, sidewalks, travel, and other urban purposes to which such alleys and streets are devoted, and the plaintiff must recover, if at all, because this use was by the Constitution subjected to the condition that the city should pay the damage to the building and the contents which was caused by the laying of the sewer. Nor is it material whether the sewer was constructed by an independent contractor or by an agent of the city, because in either case the sewer was laid by virtue of the lawful exercise of the power of the state delegated to the city to damage private property for public use, the damage was not the effect of negligence in constructing the sewer, and the Constitution conditions the exercise of this power with the liability of the delegate that exerts it to pay just compensation therefor.

The question therefore is directly presented whether or not damage inflicted upon a building and its contents, by the laying without negligence by a city of a sewer in an alley or in a street adjoining it which would not have injured the lot on which it stood in its natural state, is a legal injury recoverable by virtue of section 21 of article 2 of the Constitution of the state of Missouri, as it was amended in 1875.

Amendments to other Constitutions similar to that made in that year by the state of Missouri were introduced into the Constitutions of many states at about that time, and numerous and inconsistent opinions relative to the character and extent of the damages that may be recovered thereunder have been rendered in various jurisdictions. Chicago v. Taylor, 125 U. S. 161, 169, 8 Sup. Ct. 820, 31 L. Ed. 638; United States v. Alexander, 148 U. S. 186, 13 Sup. Ct. 529, 37 L. Ed. 415; City of Chicago v. Le Moyne, 56 C. C. A. 278, 119 Fed. 662; Parker v. Boston & Maine R. R. Co., 3 Cush. (Mass.) 107, 114, 50 Am. Dec. 709; Reardon v. San Francisco, 66 Cal. 492, 6 Pac. 317, 56 Am. Rep. 109; Brown v. City of Seattle, 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161; City of Vicksburg v. Herman, 72 Miss. 211, 215, 16 South. 434; City of Henderson v. McClain, 102 Ky. 402, 43 S. W. 700, 39 L. R. A. 349; Rigney v. City of Chicago, 102 Ill. 64; City of Elgin v. Eaton, 83 Ill. 535, 25 Am. Rep. 412; City of Pekin v. Brereton, 67 Ill. 477, 16 Am. Rep. 629; City of Chicago v. Jackson, 196 Ill. 496, 63 N. E. 1013, 1135; City of Quincy v. Jones, 76 Ill. 231, 244, 20 Am. Rep. 243; Pennsylvania R. Co. v. Lippincott, 116 Pa. 472, 483, 9 Atl. 871, 2 Am. St. Rep. 618; Pennsylvania R. Co. v. Marchant, 119 Pa. 541, 544, 13 Atl. 690, 4 Am. St. Rep. 659; Railway Company v. Meadows, 73 Tex. 32, 35, 11 S. W. 145, 3 L. R. A. 565; Borough of New Brighton v. United Presbyterian Church, 96 Pa. 331, 339; Dickerman v. City of Duluth, 88 Minn. 288, 293, 92 N. W. 1119.

The Supreme Courts of Pennsylvania and Nebraska have decided

that like amendments to the Constitutions of their states include such damages as the plaintiff here seeks, and that parties were entitled to recover them from cities under like circumstances. Ladd v. Philadelphia, 171 Pa. 485, 33 Atl. 62; City of Plattsmouth v. Boeck, 32 Neb. 297, 300, 49 N. W. 167. And if this case involved the construction of the amended Constitutions of those states we should have no hesitation in following the interpretation of these courts, as upon a careful review of the authorities we did in a Nebraska case in Mason City & Ft. Dodge R. Co. v. Wolf, 78 C. C. A. 589, 148 Fed. 961.

But this case arose in Missouri. It involves the extent of the liability of a municipal corporation of that state, and that liability depends entirely upon the interpretation of the amended Constitution of Missouri. The national courts uniformly follow the construction of the Constitution and statutes of a state announced by its highest judicial tribunal in all cases which, like that in hand present no question of general or commercial law and no question of right under the national Constitution and the acts of Congress. The character and the extent of the powers and liabilities of the political or municipal corporations of a state are questions of local law upon which the decisions of the Supreme Court of the state which creates them are authoritative in the federal courts, and neither the decisions of the courts of other states nor the opinions of the national courts in cases involving the interpretation of the Constitutions or statutes of other states are material. Detroit v. Osborne, 135 U. S. 492, 499, 10 Sup. Ct. 1012, 34 L. Ed. 260; Claiborne County v. Brooks, 111 U. S. 400, 410, 4 Sup. Ct. 489, 28 L. Ed. 470; Madden v. Lancaster County, 12 C. C. A. 566, 570, 65 Fed. 188, 192; Blaylock v. Incorporated Town of Muskogee, 54 C. C. A. 639, 640, 117 Fed. 125, 126; City of Winona v. Botzet (C. C. A.) 169 Fed. 321, 325, March 26, 1909.

In view of this established rule of law, consideration and discussion of the natural or rational meaning of the amendment to the Constitution of Missouri and a review of the opinions of the courts of other states would be useless, and we turn to the authoritative decisions of the Supreme Court of Missouri for the answer to the question which this case presents. We lay to one side as irrelevant Heinrich v. City of St. Louis, 125 Mo. 424, 428, 28 S. W. 626, 46 Am. St. Rep. 490, which permits the owner of abutting property to recover for the vacation of a street, and Walker v. City of Sedalia, 74 Mo. App. 70, 79, and McAntire v. Joplin Telephone Co., 75 Mo. App. 535, 540, which authorize recoveries for the destruction of shade trees in streets in front of the property of abutting owners because such an owner has a valuable legal right to the open street and to the shade trees therein in front of his lot, and the vacation of the street or the destruction of the trees is a taking of his property. Gulath v. City of St. Louis, 179 Mo. 38, 56, 77 S. W. 744, in which a recovery was sought on account of negligence which was alleged to have caused the overflow of a sewer upon private property beyond the limits of the street, falls into the same category, because the damage was not the effect of the public use of the street, but of negligence in that use, and the clause of the Constitution under consideration was inapplicable. We come then to

the decisions which appear to be relevant and determinative of the question at issue.

Prior to 1875, the Supreme Court of Missouri had held, in a long line of decisions, that an abutting owner, who had constructed expensive buildings and had otherwise improved his property in conformity to and in reliance upon the established grade of a street in front of it, could recover nothing of the city which changed that grade so that his buildings were rendered inaccessible and the value of his property was practically destroyed, because the city had the right to make such changes, and it did not actually take any of the owner's property thereby. The Constitution of the state was amended by adding to its declaration that just compensation must be paid for property taken the words "or damaged," for the purpose of avoiding the effect of these decisions and to protect the owners of urban property from ruinous damages inflicted upon them by these arbitrary changes of grade. Hickman v. City of Kansas, 120 Mo. 110, 116, 25 S. W. 225, 23 L. R. A. 658, 41 Am. St. Rep. 684. Mindful of the reason for the amendment that Supreme Court has held ever since 1875 that when property is damaged by establishing the grade of a street, or by changing a grade already established, or by reducing a street to an established grade, it is damaged for public use within the meaning of the amendment to the Constitution. Werth v. City of Springfield, 78 Mo. 107; State ex rel. v. City of Kansas, 89 Mo. 34, 14 S. W. 515; Sheehy v. Kansas City Cable Ry. Co., 94 Mo. 574, 7 S. W. 579, 4 Am. St. Rep. 396; Davis v. Missouri Pacific Ry. Co., 119 Mo. 180, 188, 24 S. W. 777, 41 Am. St. Rep. 648; Cole v. City of St. Louis, 132 Mo. 634, 34 S. W. 469. And in Mining Company v. City of Joplin, 124 Mo. 129, 136, 27 S. W. 406, and Smith v. City of Sedalia, 152 Mo. 283, 302, 53 S. W. 907, 48 L. R. A. 711, that court declared that under the amended Constitution a city could not pollute with sewage the waters of a creek so as to depreciate the value of the property abutting thereon without liability to make just compensation therefor. But the Supreme Court of Missouri early held, and it has steadily maintained, that a city was not required by this amendment to the Constitution to make compensation for every damage which the owner of abutting property suffered by the city's lawful use of its streets, its alleys, or its other property.

In 1885 the city of St. Louis empowered the Bell Telephone Company to erect two poles on the line of Sixth street in that city in front of a building four stories high. The owner of the property had excavated the lot under the sidewalk to the line of the curb, had there built a heavy stone wall laid in cement, and had laid large slabs of stone 12 feet long and several feet wide from this stone wall to the line of its building. The telephone company was about to cut holes through these stone slabs and through the stone and cement wall large enough to receive poles 18 inches in diameter, and to place and permanently maintain them there. Its action would necessarily obstruct ingress and egress to the building, injure the sidewalk and wall, and impede the light and air. The owner applied to the court for an injunction, and cited Werth v. City of Springfield, 78 Mo. 107, and Householder v. City of Kansas, 83 Mo. 488, cases for damages for

changes of grade; but the court said that "such damages to be recoverable must be real and substantial, and flow from a sudden and extraordinary change of grade, and not from such improvements of the street in any ordinary and reasonable mode deemed beneficial to the public good, for, as to these, the lot owner must be assumed to have consented," that the use of the street for telephone poles was one of the uses to which Chouteau and Lucas dedicated it in 1816, that the right to this use was paramount to the right of the owner of the fee of the lot, and it denied that owner any relief. Julia Building Association v. Bell Telephone Co., 88 Mo. 258, 57 Am. Rep. 398.

In Rude v. City of St. Louis, 93 Mo. 408, 6 S. W. 257, the plaintiff owned property on High street 500 feet distant from a point where railroads crossed the street. By authority of the city the tracks were depressed from four to six feet, the street was made impassable for teams for three years, and the plaintiff's property was depreciated in rental value thereby and permanently injured; but the Supreme Court of Missouri held that he could not recover any damages on this account, and so are Fairchild v. City of St. Louis, 97 Mo. 85, 11 S. W. 60, and Canman v. City of St. Louis, 97 Mo. 92, 11 S. W. 60.

In 1891, in Van De Vere v. Kansas City, 107 Mo. 83, 88, 91, 17 S. W. 695, 28 Am. St. Rep. 396, the plaintiff owned two lots in a residence district adjoining a lot owned by the city upon which it was about to construct a fire engine house. He proved, and the court found, that the construction and use of the engine house would greatly depreciate the value of his lots and would render occupants of them uncomfortable. The cases involving a change of grade were again invoked; but the court again refused to apply the principle on which they seem to rest to other classes of cases. It held that the city had the right to build and operate the fire engine house upon its lot, that "whether the plaintiff must now, in all cases when claiming that his property has been 'damaged' for public use, show that the injury is one for which he might have maintained an action if the act had not been done by authority of law, we need not say in this case. What we do say is this, that he must show that the property itself, or some right or easement connected therewith, is directly affected, and that it is specially affected." And, notwithstanding the conceded damage to the plaintiff's lot which the construction of the engine house would inflict upon the plaintiff, the court denied his prayer for an injunction.

In 1892, in Gaus & Sons Mfg. Co. v. St. Louis, Keokuk & Northwestern Ry. Co., 113 Mo. 309, 318, 319, 20 S. W. 658, 18 L. R. A. 339, 35 Am. St. Rep. 706, the city of St. Louis had given to the railway company permission to construct and to operate with steam a railroad along Main street in that city directly in front of the plaintiff's lumber factory, which consisted of two stories and a basement and extended along the street 240 feet. It had been the custom of the plaintiff to receive and to deliver lumber from its factory across this street, and there was no other convenient access to it. The construction and operation of this railroad depreciated the value of the plaintiff's property (page 318 of 113 Mo., page 659 of 20 S. W. [18 L. R. A. 339, 35 Am. St. Rep. 706]), interfered with free access to it from the street, obstructed the light and air, threw smoke, cinders, and dust into the

factory from the engines and cars, increased noise, and jarred the ground; but the court held that the operation of a railroad by steam was one of the public uses to which the street was originally dedicated, that the city had the right to devote it to that use, and that the damage to the owner of abutting property therefrom, though actual and, great, was damnum absque injuria, and that neither the city nor the railroad company was required to make just or any other compensation for it under the amended Constitution of the state of Missouri.

The fact may be here noted that the decisions which have just been cited are diametrically opposed to those of the courts of Nebraska which were reviewed and followed by this court in Mason City & Ft. Dodge R. Co. v. Wolf, 148 Fed. 961, 78 C. C. A. 589.

In 1904, in Gerst v. City of St. Louis, 185 Mo. 191, 209, 84 S. W. 34, 105 Am. St. Rep. 580, the plaintiff recovered a judgment against the city because when it was laying a sewer in an alley adjoining the plaintiff's lot and houses lower than their foundations, and there appeared to be danger that the houses would fall into the ditch, it failed to notify her to prop and protect them. The Supreme Court said:

"It is the duty of one who makes an excavation on his own land deeper than the foundation of a building on an adjoining lot, and so near to such building as to endanger it, to notify the adjoining owner of the proposed excavation and afford him reasonable opportunity to protect his property, and a failure to discharge such duty is negligence for which an action may be maintained for the injury resulting therefrom, unless the adjoining owner had actual knowledge of such proposed excavation, and there is no good reason why this rule should not be applied to municipal corporations and their contractors as well as to other persons."

And it held that an instruction to that effect was rightly given to the jury; but if, as counsel for the plaintiff insists in the case in hand, the city was absolutely liable under the amendment to the Constitution to pay for the damage caused to the buildings of Gerst by the construction of the sewer for public use, she was not, and the city was, required to prop and protect them, notice to her was immaterial, and the instruction regarding it was erroneous. It was only in case the city was not liable for such damages under the Constitution, but for negligence in failing to give the notice only, that the instruction approved in this case could have been right.

Finally, in 1908, in McGrath v. City of St. Louis, 215 Mo. 191, 114 S. W. 611, 613, 615, 616, a case arose in which the city and its contractor were sued because in laying a brick pavement in an alley they adopted and used a plan and method under which they excavated along and south of the north wall of plaintiff's buildings on the adjoining lot and caused them to crack and settle. The court held that the contractor was independent, and the city was not liable for his negligence in carrying out its plan, and that the city was not liable to the plaintiffs because it had the right to pave the alley and to excavate for that purpose to the line of the plaintiff's lot, and, if the plaintiffs knew it was so doing in time to prop and protect their buildings, they could not recover, although the buildings cracked and settled into the excavation. Thus the city answered that the plan of paving required the excavation to be done wholly in the alley, and that it was not necessarily dangerous to the buildings, and the court held that:

"The mere fact that the wall cracked and fell into the alley was not sufficient in itself to entitle the plaintiffs to recover."

And that:

"If the work contemplated would not, when properly done, necessarily cause injury to third persons, no right of action accrues on account of the plans alone."

The city alleged in its answer that the plaintiffs' damage resulted from their own negligence, in that they knew in ample time that the city was about to make the excavation to a plane below the foundations of their buildings, and that there was danger that they would fall into the opening, and yet they did not prop or protect them, and it denied that it was the duty of the city to support the walls of these buildings, and alleged that it was the duty of the plaintiffs so to do; and the court held that since the plaintiffs knew in time of the coming excavation the duty to protect the walls of their buildings rested upon them, and not upon the city, and that they could not recover the damage which they sustained by their fall. In our opinion this decision is fatal to the claim of the plaintiff in the case in hand. It is true, as counsel for the plaintiff urges, that McGrath and his coplaintiffs sought to recover of the city on the ground that it was negligent (1) in the execution of the plan, (2) in the adoption of its plan, and (3) in its failure to give the owners of the abutting property notice to prop and protect their buildings, and it is also true that no claim was made that the plaintiffs were entitled to just compensation for the damage to their buildings by virtue of the amendment to the Constitution; but in view of the repeated consideration and interpretation of that amendment by the Supreme Court of Missouri in the cases which have been cited and in many others, and in view of the fact that if abutting owners of property may recover the damage to their buildings sustained by a city's lawful excavation in a street or alley by virtue of this amendment regardless of the negligence of the city, as plaintiff's counsel claims, no acts of negligence on the part of the city were requisite to entitle McGrath et al. to a judgment against the city of St. Louis for just compensation for the damage to their property caused by the excavation in the alley below the foundation of their buildings, it would be an unwarrantable assumption to presume that this amendment to the Constitution was not in the minds of the judges of that court when they decided this and the last preceding case, and that they discussed and decided the questions of negligence there treated and rested their judgments upon the decisions of them when those questions were moot and immaterial. We cannot indulge such a presumption.

The fact that the court below, upon a preliminary hearing in 1905, expressed the view that the plaintiff in this case might recover, has not escaped attention (137 Fed. 439); but the decisive opinion in McGrath v. City of St. Louis had not then been rendered, and many of the cases which have been considered and reviewed do not appear to have been called to the attention of the court at that time.

It is not the duty nor is it the purpose of his court to seek out, to discuss, or to attempt to announce the guiding reason or prin-

ciple which has produced the interpretation of the amendment to the Constitution of Missouri which the Supreme Court of that state has developed. It is sufficient for this court that the construction of that Constitution has been plainly written by the Supreme Court of that state. That Constitution declares that private property shall not be taken or damaged for public use without just compensation. As we understand the decisions of that court, this is their result: The word "damaged" in that Constitution includes damage to adjoining property from the establishment or the change of a grade of a street or alley, from the reduction of a street or alley to an established grade, and from the pollution of the waters of a creek with sewage, and for these damages recoveries may be had thereunder, although they were lawfully inflicted. On the other hand, the word "damaged" in that Constitution excludes damage to adjoining property by depreciation of its value, by obstruction of access to it, by noise, by smoke, by cinders, by the cracking and falling of the walls of buildings from the removal of lateral support when these injuries are caused either by the opening of a stone sidewalk and basement wall and the erection of poles therein, or by the construction and operation of a fire engine house, or by the construction and operation by steam of a railroad upon the street just in front of a lumber factory, or by the laying of a sewer or a pavement in an alley lower than the foundation of buildings upon the abutting property, whereby their lateral support is weakened and they become cracked and injured. The case at bar falls in the latter class. The plan of the sewer in question here was not necessarily dangerous to the plaintiff's property. The city had the right to make and to use it. The excavation for it was to be made, and it was made wholly within the alley. The plaintiff knew that it was to be made and was aware of the danger that his building would settle and crack therefrom in time to have propped and protected it, and according to the decisions of the Supreme Court of Missouri his damage was damnum absque injuria, and he was entitled to no compensation for it under the Constitution of that state.

The title to the property injured by the construction of the sewer was in 1903, and ever since has been, held by the plaintiff as president and trustee for the American News Company, a joint-stock association organized under the laws of the state of New York, some of the partners in which were citizens of the state of Missouri; but Johnson, the plaintiff, was and is a citizen of the state of New York. Counsel for the defendant contend that on account of this fact the court below had no jurisdiction of the action, and that Johnson had no capacity to sue, and they cite in support of this contention Chapman v. Barney, 129 U. S. 677, 682, 9 Sup. Ct. 426, 32 L. Ed. 800, and Weir v. Metropolitan Street Railway Co., 126 Mo. App. 471, 103 S. W. 583; but in the former case there was no satisfactory proof of the citizenship of Barney, the plaintiff, the decision of the Missouri Court of Appeals in the latter case is not controlling upon the question of the jurisdiction of a national court, and a citizen of one state who holds the title to property in trust for others many maintain an action for damage to it against a citizen of

another state in a federal court without regard to the citizenship of his cestuis que trust. Bonnafee v. Williams, 3 How. 574, 577, 11 L. Ed. 732; Irvine v. Lowry, 14 Pet. 298, 299, 10 L. Ed. 462; Knapp v. Railroad Company, 20 Wall. 117, 123, 22 L. Ed. 328; Coal Company v. Blatchford, 11 Wall. 172, 175, 20 L. Ed. 179.

Moreover, the statutes of the state of New York, under which the news company was organized, authorized its president to bring and to maintain this or any other like action (Chase's New York Civil Procedure, § 1919, as amended in 1900), and a statute of Missouri provided that:

"A trustee of an express trust, or a person expressly authorized by statute, may sue in his own name without joining with him the person for whose benefit the suit is prosecuted." Rev. St. Mo. 1899, § 541 (Ann. St. 1906, p. 578).

The plaintiff therefore clearly had capacity to sue, both as trustee and as a person expressly authorized by statute, and the Circuit Court had ample jurisdiction to entertain his action and to render judgment therein. Whitman v. Hubbell (C. C.) 30 Fed. 81; Boatner v. American Express Co. (C. C.) 122 Fed. 714, 718; Baltimore & Ohio R. Co. v. Adams Express Co. (C. C.) 22 Fed. 404, 407, 408; Maltz v. American Express Co., 1 Flip. 611, Fed. Cas. No. 9,002; Reade v. Waterhouse, 52 N. Y. 587; United States v. Rundle, 27 Wash. 7, 67 Pac. 395, 396; Merchants' Loan & Trust Co. v. Clair, 36 Hun (N. Y.) 362, 363.

The American News Company is not a corporation; but one of the reasons why the court below instructed the jury to return a verdict against it was that it had never qualified itself to do business as a foreign corporation under the laws of the state of Missouri, which impose a penalty of $1,000 and a disability to maintain actions in the courts of that state for such a failure by a foreign corporation that engages in business in that state. Rev. St. Mo. 1899, §§ 1024, 1025, and 1026. While section 943 of the chapter in which the above provisions are now found declares that the term corporation as used in that chapter shall be construed to include joint-stock companies or associations, it is exceedingly doubtful that it has the effect to require foreign joint-stock companies to comply with the provisions of those sections, because they were enacted as parts of distinct acts of the Legislature after section 943 was in force. Conceding, however, without deciding, that it has that effect, the failure of the news company to qualify as a foreign corporation was not fatal to this suit.

In the first place, its disqualification by the law of Missouri to maintain actions in the courts of that state did not deprive it of its right to maintain them in the national courts, for the jurisdiction of the latter was not granted, and it may not be revoked, annulled, or impaired by the law or act of any state. Butler Bros. Shoe Co. v. United States Rubber Co., 84 C. C. A. 167, 182, 156 Fed. 1, 16; Dunlop v. Mercer, 86 C. C. A. 435, 441, 156 Fed. 545, 551.

In the second place, the alleged liability upon which this cause of action was founded was not contractual in any such sense that it was destroyed because the Supreme Court of Missouri decided

that contracts of disqualified foreign corporations were invalid. Tri-State Amusement Co. v. Forest Park Highlands Amusement Co., 192 Mo. 404, 415, 419, 90 S. W. 1020, 4 L. R. A. (N. S.) 688, 111 Am. St. Rep. 511; Chicago Mill & Lumber Co. v. Sims, 197 Mo. 507, 95 S. W. 344; Roeder v. Robertson, 202 Mo. 522, 100 S. W. 1086. While this action may have been technically an action ex contractu, it was really founded upon an injury inflicted upon real and personal property by the city and an alleged constitutional liability therefor. A meeting of the minds of the parties, a good or a valuable consideration, and mutuality are essential elements of an ordinary contract which do not inhere either in this alleged liability or in the transactions out of which it arose. It is a liability for damage to property owned by the plaintiff. A construction of the qualifying statutes of Missouri which would deprive a foreign corporation of the property it owned or of the liability of him who injured or destroyed that property, unless such a foreign corporation complied with the qualifying statutes of that state and did business in the state thereunder, would make those statutes confiscatory and unconstitutional. Such was not their purpose nor their effect, and the failure of the news company to comply with them did not deprive the plaintiff of his right to maintain an action in the court below for any legal injury which was inflicted upon his property by the city.

The judgment of the court below must be affirmed, for the reason first stated in this opinion; and it is so ordered.