## SMITH v. BELL.

**(Circuit Court of Appeals, Eighth Circuit. October 12, 1914.)**

*(Syllabus by the Court.)*

**1. Courts (§ 311\*)—Mortgages (§ 427\*)—Jurisdiction of Federal Court—Foreclosure.**

The citizenship and residence of the trustee in a mortgage to secure the payment of a claim owned by another, and not those of such owner, condition the jurisdiction by a national court of a suit to foreclose the mortgage, because the trustee is, and the cestui que trust is not, an indispensable party to the suit.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 858; Dec. Dig. § 311;\* Mortgages, Cent. Dig. §§ 1269, 1272-1287; Dec. Dig. § 427.\*

Mortgage foreclosure in federal courts, see note to Seattle, L. S. & E. Ry. Co. v. Union Trust Co., 24 C. C. A. 523.]

**2. Gas (§ 13\*)—Breach of Contract—Pleading.**

A pleading that one failed to operate wells and furnish gas therefrom continuously discloses no breach of a covenant to sell the surplus such wells may produce.

[Ed. Note.—For other cases, see Gas, Cent. Dig. §§ 5-9; Dec. Dig. § 13.\*]

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Frank A. Youmans, Judge.

Action by John A. Bell, Jr., against P. F. Smith. From decree for plaintiff, defendant appeals. Affirmed.

H. B. Martin and A. F. Moss, both of Tulsa, Okl., for appellant.

James A. Veasey and J. P. O'Meara, both of Tulsa, Okl., for appellee.

Before SANBORN and CARLAND, Circuit Judges, and REED, District Judge.

SANBORN, Circuit Judge. The defendant below, P. F. Smith, complains of a decree of foreclosure of a mortgage he made to John A. Bell, Jr., because the court below struck out of his answer that part by which he sought to question the jurisdiction of the court and that part by which he sought to set up a counterclaim and set-off.

The complaint pleaded the mortgage and the notes it secured, and copies of them were attached to it. The mortgage and the notes ran to John A. Bell, Jr., trustee, and the mortgage provided that the defendant should keep the buildings and personal property described therein insured, with the loss payable to Bell or his successors in trust; that if default should be made in any of the conditions of the mortgage the whole sum intended to be secured by the mortgage should, at the option of Bell, or his successors in trust, or any other legal holder of the indebtedness, become due; and that any or either of them should then have full right and authority to take possession of the premises mortgaged and to foreclose the mortgage.

[1] The plaintiff alleged in his complaint, and the defendant admitted in his answer, that the former was a resident and citizen of the state of Pennsylvania and that the latter was a resident and citi-

---

zen of the state of Oklahoma; but the defendant alleged that the Standard Oil & Gas Company of Bartlesville, Okl., was the owner and holder of all the beneficial interest in the notes and mortgage and the real party in interest in the case, that that company was a citizen and resident of the state of Oklahoma, and that for that reason the court below had no jurisdiction of the suit. It was this portion of the answer that defendant first insists it was error for the court to strike out. But by the terms of the stipulation made by the defendant in the mortgage he expressly agreed that upon default in the conditions thereof either Bell, the trustee, or his successor in the trust, might take possession of the property and foreclose the mortgage, and he is thereby estopped from denying the competency of the trustee so to do. The legal title to the mortgage was in the trustee. He was the indispensable party plaintiff in the suit, and while the owner of the notes, the beneficiary of the trust, may have been a proper party, it was not an indispensable one, and its citizenship was immaterial to the jurisdiction of the court below. The citizenship and residence of the trustee in a mortgage to secure the payment of a claim owned by another, and not those of such owner, condition the jurisdiction by a national court of a suit to foreclose the mortgage, because the trustee is, and the cestui que trust is not, an indispensable party to the suit. Dodge v. Tulleys, 144 U. S. 451, 455, 456, 12 Sup. Ct. 728, 36 L. Ed. 501; Rust v. Brittle Silver Co., 58 Fed. 611, 612, 7 C. C. A. 389, 390; Johnson v. City of St. Louis, 172 Fed. 31, 41, 96 C. C. A. 617, 627, 18 Ann. Cas. 949; Allen West Commission Co. v. Brashear (C. C.) 176 Fed. 119, 121; Knapp v. Railroad Co., 20 Wall. 117, 122, 123, 22 L. Ed. 328; Gardner v. Brown, 21 Wall. 36, 41, 22 L. Ed. 527; Mexican Central Ry. Co. v. Eckman, 187 U. S. 429, 23 Sup. Ct. 211, 47 L. Ed. 245.

[2] The portion of the answer which sought to set up a counterclaim or set-off made an agreement between the Standard Oil & Gas Company, the cestui que trust under the mortgage, a part of the answer, and alleged a breach of it by that company in these words:

"That the said Standard Oil & Gas Company, from time to time from the said 3d day of January, 1912, until about the 15th day of November, 1912, continued to own and operate the aforesaid oil wells, but failed, neglected, and refused to operate said wells continuously, frequently permitting the operation of their said wells to lapse and be discontinued for considerable periods of time, thereby interrupting the supply of gas necessary for the operation of defendant's plant, so that defendant's machinery and labor necessary for operating the same were obliged to lie idle for many days, to defendant's great injury and damage in the sum of five thousand dollars."

But repeated perusals and careful consideration of the agreement have disclosed no promise or covenant by the oil company to operate its oil wells continuously or to furnish an uninterrupted or sufficient supply of gas for the operation of the defendant's plant. On the other hand, the oil company by an express stipulation of the contract reserved to itself sufficient gas to operate its leases, and the extent of its obligation to furnish gas to the defendant was that so long as the leases owned by it on January 3, 1912, when the agreement was made, within a radius of two miles from defendant's plant, or other leases

thereafter acquired by it within such radius, should, after reserving sufficient gas to operate its leases, "produce casing-head gas in sufficient quantities to be desirable for manufacture in said plant," it would sell such gas to the defendant for three cents per cubic foot. The contract contains no covenant by the oil company to operate its wells continuously or at all, none to produce sufficient or any gas to operate the defendant's plant, nothing but a promise to sell whatever gas they do produce in excess of the gas required to operate them at three cents per cubic foot so long as the wells produce an excess sufficient to make it desirable for manufacturing purposes in the defendant's plant, and the answer contains no allegation that the wells produced such an excess, or that the oil company failed or refused to furnish any of the excess actually produced.

The result is that this portion of the answer failed to state facts sufficient to state a cause of action, counterclaim, or set-off against the oil company or the plaintiff, there was no error in striking it out, and the decree below must be affirmed.

It is so ordered.